## THE LAURA MADSEN.

(District Court, D. Washington, W. D.  November 27, 1901.)

MARITIME LIENS—MEDICAL TREATMENT OF STOWAWAY—AUTHORITY OF MASTER.

A stowaway, discovered after a vessel had left port, was required by the master to sign shipping articles for the voyage. He was not a seaman, and while engaged in voluntarily assisting the crew he fell on the deck, and was severely injured. On reaching a port he was placed by the master in a hospital, where he was treated by libelants as physicians. *Held*, that the act of the master in requiring him to sign the articles under the circumstances did not attach him to the vessel, nor create any obligation different from that which necessarily arose from his being voluntarily and wrongfully on board, and that the master was without authority to pledge the credit of the vessel for his treatment.

In Admiralty. Libel in rem against the schooner Laura Madsen, by J. William Scammel, M. D., and G. W. Overmeyer, M. D., to recover for professional services in treating one Fred Moore for injuries received at sea on board said schooner. Heard on the merits. Decree of dismissal.

John C. Hogan, for libelants.

Sidney Moor Heath and Hudson & Holt, for claimant.

HANFORD, District Judge. The schooner Laura Madsen, employed in the lumber trade between Gray's Harbor, in this state, and San Diego, Cal., when one day at sea, on a return voyage from San Diego, was found to have an extra man on board; that is to say, a stowaway was discovered. The man was not a sailor, but, being destitute, and wishing to make the trip from San Diego to this state, had clandestinely intruded and secreted himself upon the vessel, and remained secreted until he was discovered. The captain required him to sign the shipping articles to serve as a member of the crew to the end of the voyage, and he was marked on the articles as a stowaway. He was not required to do a seaman's work, but was willing to lend a hand whenever he found an opportunity, and while he was voluntarily hauling on the braces when the vessel was being maneuvered he fell on the deck, and was severely injured. On arrival at Aberdeen the libelants removed him to the hospital, and treated his injuries until he was practically cured. There is a dispute as to whether the captain induced the libelants to undertake the cure of the stowaway by promising that the ship would be responsible for their bill, but, according to my opinion it is immaterial whether there was such a promise by the captain or not. It is a principle of maritime law that a ship is liable for the necessary medical treatment and expenses incident to the cure of seamen who become ill or suffer injuries in its service, but in this case the man who was injured had imposed himself on the vessel, and neither the vessel, her owners, nor master owed him any duty, except to give him humane treatment while he necessarily remained on board. He came to Aberdeen as a waif from the sea, helpless and destitute, and having no claim upon any particu-

lar individual, and was necessarily a public charge, or an object of private charity. The captain of the ship, however, was not authorized to pledge the ship for the expense of his cure or maintenance as an act of charity. The authority of the captain of a ship to pledge the credit of the ship is limited by necessity. In procuring things that are necessary to preserve the ship and enable her to proceed upon her voyage his authority is ample, but he has no authority to enter into any contract which can be enforced by a suit in rem, not required to make his ship seaworthy, or to meet her obligations as a carrier or to her crew. The act of signing the shipping articles at sea under compulsion did not attach the stowaway to the vessel, nor create any obligation different from what necessarily arose from the fact of his being on board by his own voluntary and wrongful act.

Suit dismissed, at libelants' costs.