363 So.2d 1220 (1978)
Cindy NORMAND, Individually, and on Behalf of her Minor Son, Mark Normand
v.
CITY OF NEW ORLEANS, Audubon Zoological Society and Travelers Insurance Company (Consolidated with No. 8411, Cynthia NORMAND, Individually and on Behalf of Her Minor Son, Mark Normand
v.
John A. MOORE, Frank Ercole, Sylvester Mills, Dick Zitzmann, Walter Warren, Faye Steele and Travelers Insurance Company).
No. 8410.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1978.
Rehearing Denied November 20, 1978.
*1221 Orlando G. Bendana, New Orleans, for plaintiff-appellant.
Philip S. Brooks, City Atty. and Robert Morlas Schoenfeld, Asst. City Atty., for defendants-appellees, City of New Orleans and Sylvester Mills.
James J. Morse, New Orleans, for defendants-appellees, The Audubon Park Commission, John A. Moore, Walter Warren, and The Travelers Ins. Co.
Before REDMANN, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Is the Audubon Park Commission liable for damages sustained by a two-year old child who was bitten by a caged ape at the zoo, when the Commission's employee returned to the zoo after working hours to perform an employment task and then, after completing the task and in violation of the Commission's rules, took the mother and child into the primate night house behind the cages, an area off limits to the public? The trial court (both judge as to the Commission and jury as to its insurer) answered in the negative, and Mrs. Cindy Normand has appealed from the judgment, rendered after trial on the merits, which dismissed her suit on behalf of her son, Mark.

I
Mrs. Normand testified: At about 5:30 p. m. on the day of the accident she and her son were invited by their neighbor, Frank Ercole, a zoo employee (who did not have charge of the primates), to ride with him and his brother George to the nearby zoo, where Frank (still in uniform) was returning to turn off the water to the pool in the primate area, an employment duty he had forgotten to complete that day. They entered the zoo through the rear entrance and met the curator of the bird department, with whom George Ercole conversed. After Frank Ercole determined that someone *1222 had already turned off the water, he invited her and her son to view an orangutan. She carried the boy as they walked through the building behind the primates' cages in an aisleway which measured five to six feet between the rear wall and the cages. When Frank warned them not to get too close to the cages, she cautioned Mark to keep his hands down. However, Mark pointed to a gibbon ape which grabbed and severely bit his hand. She admitted carrying the child in her right hand with the cages to their right, so that the child was within two to three feet of the cages.
Frank Ercole was discharged after the accident and was not available to testify. His brother, George, who was also a zoo employee at the time of the accident and still worked there at time of trial, verified that Frank had returned to the zoo for the purpose of turning off the water, which was part of his regular duties. He testified, however, that he advised Frank against taking Mrs. Normand and the child into the zoo in violation of the employer's rules.
Under administrative policy employees were prohibited from entering the zoo without authorization after closing time and from bringing visitors into the zoo. Moreover, no visitor was ever allowed beyond guard rails, and only certain designated employees were allowed in the primate house. There were "Keep Out" and "Employees Only" signs at various places along the route traveled by Frank Ercole and the Normands.

II
The owner of an animal is answerable for the damage caused by the animal. C.C. art. 2321. The fault is in the nature of strict liability, and the master of the animal is presumed to be at fault. Holland v. Buckley, 305 So.2d 113 (La.1974). However, the owner can exculpate himself by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.
In the present case the Commission owned the animal and also employed the person who caused (or contributed to causing) the harm by taking the victim into a position of danger. Therefore, in order to avoid liability the Commission had the burden of showing that Frank Ercole was not a person for whom the Commission was responsible at the time of the accident. The issue is broadly one of vicarious liability under C.C. art. 2320 and more precisely one of scope of employment.
The trial court in reasons for judgment found that Frank Ercole was violating the Commission's rules, without the Commission's knowledge, and was therefore not in the course and scope of his employment. However, the fact that an employee's conduct violates the employer's express rules is not conclusive of the issue of scope of employment. Bordelon v. Great American Idem. Co., 124 So.2d 34 (La.App. 3rd Cir. 1960). Other considerations include whether the employee's conduct occurred substantially within the authorized limits of time and space and was actuated, at least in part, by a purpose to serve the employer. Prosser, Torts § 70 (4th ed. 1971). The ultimate determination depends upon the particular facts and circumstances of each individual case.
Ercole's return to the zoo after working hours for the purpose of turning off the water, although not a task of great urgency, was employment related, and his return was at least partially for the purpose of serving his employer. Moreover, his taking visitors after hours into those sections of the zoo where visitors are ordinarily permitted arguably has no significant adverse bearing on the determination of whether his conduct occurred with the scope of his employment. However, the fact that Ercole, after completing his task, took visitors beyond the guard rail and into a section of the zoo which was a place of danger and from which visitors were excluded, even during regular zoo hours, is a significant consideration.
The policy of the master-servant law is to place upon the master the responsibility *1223 of the servant's misconduct in the scope of the master's enterprise.[1] That purpose is not served if the servant's misconduct occurs when he has abandoned or completed the employment and engages in a frolic which is in no manner related to service of the master.
Although the employee in the present case originally returned to the zoo to perform an employment task, his conduct in taking a child beyond the guard rail, into close proximity of wild animals, was such a significant and unpredictable deviation and departure from his employment duties and was so unrelated to service of the employer as to remove the conduct from the scope of his employment. The conduct was more properly characterized as motivated entirely by personal considerations, completely extraneous to the employer's interest, and as outside the authorized limits of time and space.[2]
We conclude that the Commission has exculpated itself from liability under C.C. art. 2321 by showing that the harm was caused by the fault of third persons, Ercole and Mrs. Normand, and that the Commission was not responsible for the fault of either.
The judgment is affirmed.
AFFIRMED.
GULOTTA, Judge, concurring.
I concur in the result.
NOTES
[1] C.C. art. 2320 provides:

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
[2] Lemmon, J., notes his opinion that the determination of whether the risk created by an employee's conduct is includable within the scope of his employment is similar to the determination (as part of the duty-risk approach) of whether the risk created by a person's conduct is encompassed within the scope of the duty owed because of that conduct.

Not every breach of duty will render a person legally liable when the breach plays a part in producing injury; similarly, not every act by an employee will render the employer liable when the fact of employment plays a part in the scenario leading up to the injurious consequences. There must be an ease of association between the employment and the employee's act.
While there may be an ease of association, for example, between the employer's enterprise and the service station employee's unauthorized smoking while pumping gasoline, there is no such ease of association in this case between the Commission's enterprise and the risk created by Ercole's taking the child into the primate house, after he had completed the menial employment chore which originally caused him to return to a different section of the premises. The risk is simply not typical of or reasonably incidental to the service of the employer. See 2 Harper & James, Torts § 26.7 (1956).