Mercilyn **BUCHANAN**, et al.,
Plaintiffs-Appellants,

v.

**STANSHIPS, INC., Defendant-Appellee.**

No. 84–3198
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1984.

Roy Maughan, Baton Rouge, La., for plaintiffs-appellants.

Robert P. McCleskey, Jr., New Orleans, La., for defendant-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

The plaintiff-appellant Mercilyn Buchanan, individually and as guardian of the minor Adreas Mark Anthony Shaw, seeks reversal of summary judgment granted the defendants-appellees Stanship, Inc., and Trident Steamship Company in the United States District Court for the Middle District of Louisiana. For the reasons set forth below, we conclude that the judgment should be affirmed in part and reversed in part and the case remanded for proceedings not inconsistent with this opinion.

I.

On December 1, 1980, the body of Eric A. Foster Shaw, a Jamaican citizen, was discovered in a ballast tank of the bulk cargo carrier M/V Jaymat Trident, a vessel owned by Trident Steamship Company ("Trident") and operated by Standard Shipping, Inc., whose general agent in the United States is Stanship, Inc. ("Stanship"). The coroner determined that Shaw had died of cardiorespiratory arrest, cause "undetermined due to decomposition of the body." The vessel had just completed a voyage originating in Ochos Rios, Jamaica, on November 26 and terminating in Baton Rouge, Louisiana, on November 30, 1980.

Claiming damages for the wrongful death of her son, Mercilyn Buchanan, mother of the decedent, instituted this action under the Jones Act, 46 U.S.C. § 688, and the general maritime law in the United States District Court for the Middle District of Louisiana, on behalf of herself and the decedent's minor son, against Stanship. Buchanan later amended the complaint to name Trident as a party defendant.

Seeking dismissal of both the Jones Act and general maritime law claims, Stanship and Trident filed a motion for summary judgment. They alleged that the decedent was not a Jones Act seaman at the time of his death and that they were not liable for the acts of employees that were illegal or beyond the scope of their employment. In support of their motion, Stanship and Trident submitted the coroner's report and certificate of death, the M/V Jaymat Trident's crew lists for the months of October, November, and December 1980, and affidavits of Trident's Secretary and Stanship's Operations Manager. Relying on a deposition of witness Don David Todd and the unsigned affidavits of herself, witness Percy Todd, and a police officer investigating the death, Buchanan opposed the motion for summary judgment.

The district court continued the motion, originally noticed for hearing on November 18, 1983, to December 16, 1983 "to allow [Buchanan] an opportunity to obtain the requisite signatures." [1] Apparently, because of the affiants' presence in Jamaica, Buchanan's attorney experienced some difficulty in obtaining the signed affidavits. The court delayed ruling on the motion another thirty days from December 16 to give Buchanan further opportunity to file the signed affidavits. On January 16, 1984, the signed affidavits not yet filed, the district court granted the motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and dismissed Buchanan's claims with prejudice.

Finding that the decedent was not employed on the vessel and observing that a stowaway does not enjoy seaman status under the Jones Act, the district court held that the decedent was not a Jones Act seaman. In addition, the court held that the owner Trident and the operator Stanship could not be liable for the unlawful acts of their employees, including the acceptance of money to smuggle an alien into the United States. Further the court held that neither Trident nor Stanship could be liable for the tortious acts of employees who violated a company policy forbidding its vessels to carry passengers for hire or otherwise because the employees' conduct would fall beyond the scope of their employment. The district court found no admissible evidence establishing that the decedent was a fare-paying passenger, and it found no evidence that Trident or Stanship had violated the duty of humane treatment owed a stowaway. It reasoned that "[n]egligence on the part of a member of the crew acting outside the course and scope of his employment along with the contributory negligence of the decedent cannot operate to render [Trident or Stanship] liable." The court also found that there was "no evidence that [Stanship or Trident] knew or should have known that [the decedent] was a stowaway on the vessel." Finally, the court observed that a party cannot rely on pleadings alone to oppose a motion for summary judgment and that the unsigned affidavits submitted by Buchanan did not constitute "sufficient evidence which would cause the Court to deny defendants' motion for summary judgment."

On January 27, Buchanan filed a motion for a new trial or modification of the judgment, and she submitted the elusive affidavits, now signed and dated January 4, in support of her motion. The import of the affidavits is that in November 1980 the decedent paid the boatswain mate of the

---

**1.** On November 15, 1983, pursuant to Rule 56(f), counsel for Buchanan filed an affidavit in which he attested that the affidavits could not be signed and returned from Jamaica in time to file with Buchanan's opposition to summary judgment. On January 16, 1984, Buchanan's counsel wrote the trial judge concerning his efforts to contact the would-be affiants to no avail.

M/V Jaymat Trident $1500 in return for passage to the United States and that it was customary for Jamaican citizens to pay crew members for passage to the United States aboard the M/V Jaymat Trident.[2] The district court denied the motion but only after considering the signed affidavits and the deposition of witness Don David Todd. The court found that the affidavits and the deposition only established that a crew member "may have assisted in smuggling the [decedent] on board the vessel." The court concluded that "[t]here is simply no material issue of fact in dispute and the defendant is entitled to summary judgment as a matter of law." Buchanan appeals.

## II.

On appeal Buchanan contends that: (1) the district court erred in finding that Stanship and Trident did not know of the decedent's presence aboard the M/V Jaymat Trident, that the decedent was aboard in the capacity of stowaway rather than passenger, and that there was no evidence that Stanship and Trident had violated the duty of humane treatment they owed the decedent; (2) the district court erred in holding that Stanship and Trident were not liable for the tortious acts of their employees when those acts were criminal or outside the scope of the employees' employment; (3) Stanship and Trident are strictly liable for the decedent's death because of a defective condition in the ballast tank in which the decedent's body was discovered; and (4) summary judgment should not be granted in cases where the evidence in a case is in the exclusive possession of the movant. On appeal, Buchanan has dropped the contention that the decedent was a Jones Act seaman at the time of his death. Each of Buchanan's contentions will be addressed in turn.

**2.** An affidavit of the investigating police officer dated November 18, 1983, states that "there was no evidence of fecal or urinary matter in the tank where the decedent was found" and that there was "no bedding or evidence that anyone had been sleeping in the tank." The officer did find extra clothing, toilet articles such as soap and a toothbrush, and some food items. He further testified that "a person in the tank could

## III.

Summary judgment may be granted only if it appears from the pleadings, depositions, admissions and affidavits, considered in the light most favorable to the non-moving party, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467–68, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *United States v. An Article of Drug Consisting of 4,680 Pails, More or Less, Each Pail Containing 60 Packets*, 725 F.2d 976, 984 (5th Cir.1984). Once the movant shows that no genuine issue of material fact exists, the opposing party must show that summary judgment is inappropriate by submitting opposing affidavits or other competent evidence presenting specific facts that establish that there is a genuine issue of material fact for trial. The opposing party may not rely on the pleadings alone. Fed. R.Civ.P. 56(e). In ruling on the motion for summary judgment, the district court may consider only those allegations that would be admissible in evidence and are made on the personal knowledge of an affiant whose competence to testify on such matters is affirmatively stated in the affidavit. *Id.*

## IV.

Rule 56(f) provides that a court may deny the motion for summary judgment, grant a continuance, or make such other order as is just, if a party opposing the motion cannot present facts essential to justify his opposition. The party must file an affidavit explaining why he is unable to present by affidavit the requisite facts. Buchanan's counsel filed such an affidavit

not have locked or closed the cover and that one person could not open the cover from the deck as it requires the use of a special tool...." On the basis of this affidavit alone, timely submitted by Buchanan before the summary judgment, the district court could have found that "a member of the crew may have assisted in smuggling the [decedent] on board the vessel."

on November 15, 1983, indicating that the affidavits he had sent the proposed affiants in Jamaica had not yet been signed and returned. This was followed by a letter to the trial judge on January 16, again recounting counsel's efforts to gather the affidavits. The motion for summary judgment was filed on October 27, 1983. Counsel for Buchanan acted with reasonable promptness and diligence in forwarding proposed affidavits to the would-be affiants in Jamaica. In good faith, he attempted to contact a Jamaican attorney to get the affiants to speed their return of these affidavits. That the returned and signed affidavits were dated January 4, and received by counsel on January 25, that summary judgment was entered on January 26, and that the motion for a new trial or modification of the judgment was filed on January 27, augurs against disregarding the signed affidavits on appeal and affirming the judgment as a matter of technical pleading because of Buchanan's failure to submit the signed affidavits one day earlier. Rule 56(f) should be applied with a spirit of liberality. *See, e.g., Slagle v. United States,* 228 F.2d 673, 678 (5th Cir.1956); C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2740, at 532 (2d ed. 1983); *cf. Securities & Exchange Commission v. Spence & Green Chemical Co.,* 612 F.2d 896 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). A not unduly liberal application of Rule 56(f) in the instant case suggests that we consider Buchanan's tardy affidavits in assessing her contentions on appeal just as the district court considered them in denying the motion for a new trial or modification of the judgment.

■ The underlying issue in this case is whether Trident or Stanship breached its duty of care to the decedent. The district court determined that the applicable standard of care owed the decedent as a stowaway was one of humane treatment. Buchanan contends that this was error. She maintains that, because the decedent was not a stowaway, the applicable standard of care is one of reasonable care under the circumstances. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

The standard of care owed a stowaway is one of "humane treatment while he necessarily remains on board." *The Laura Madsen,* 112 F. 72 (W.D.Wash.1901); M. Norris, *The Law of Seamen* § 667 & n. 15. The standard is lower than the more general standard enunciated by the Supreme Court in *Kermarec, supra,* at 632, 79 S.Ct. at 410: "We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." On its face, because affording passage to a stowaway would be inimical to the legitimate interest of a vessel owner, the *Kermarec* standard might be deemed inappropriate.

But the affidavits submitted by Buchanan state that it was a customary practice for the M/V Jaymat Trident to carry persons who paid for passage from Jamaica to the United States, and Buchanan contends that actual or constructive knowledge of the practice by Trident and Stanship gave rise to a standard of reasonable care on the part of Trident and Stanship akin to the *Kermarec* standard. Stanship and Trident contend that Buchanan presented no credible evidence that they knew of the decedent's presence on board their vessel until his body was discovered on December 1. They submitted affidavits stating that they had no knowledge of the vessel having previously carried stowaways or passengers. This conflict in the evidence presents a material issue of fact that should be resolved at trial.

In *Steamboat New World v. King,* 57 (16 How.) U.S. 469, 14 L.Ed. 1019 (1853), the Supreme Court held that, when it was customary for the masters of steamboats to render gratuitous passage to other steamboat employees and one such employee was injured by a boiler explosion, the owner of the steamboat was liable for the damages. The Court reasoned that "[i]t is proved that the custom thus to receive steamboat men

is general. The owners must therefore be taken to have known it, and to have acquiesced in it, inasmuch as they did not forbid the master to conform to it." *Id.* at 473, 14 L.Ed. 1019. The Court then stated that the vessel owed even its gratuitous passengers "the greatest possible care and diligence." *Id.* at 474, 476, 14 L.Ed. 1019. Similarly, if it is shown at trial that members of the crew of the M/V Jaymat Trident customarily received stowaways or other persons for carriage to the United States and that Trident or Stanship knew or should have known it, *Kermarec's* standard of reasonable care under the circumstances, rather than the duty of humane treatment, may be more appropriately applied to Stanship and Trident, notwithstanding the promulgation of company rules proscribing the rendering of passage on board the M/V Jaymat Trident.[3]

■ The district court held that "[n]either the vessel nor its owners or operators can be found liable for the tortious acts of its employees when those acts are criminal or outside the course and scope of their employment," citing *Palestina v. Fernandez,* 701 F.2d 438 (5th Cir.1983). In the absence of a uniform federal rule, "courts applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law." *Id.* at 439; *see Baggett v. Richardson,* 473 F.2d 863, 864 (5th Cir.1973); *Alcoa Steamship Co. v. Charles Ferran & Co.,* 383 F.2d 46, 50 (5th Cir.1967), *cert. denied,* 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). Because the general maritime law embodies no principle contrary to those general principles of Louisiana tort law briefed by both parties, we turn to the law of Louisiana to fix the rights of the parties.

In *Palestina, supra,* we held that an employer was not liable for damages arising out of a collision involving a part-time employee who, without the employer's consent took one of the employer's boats on a pleasure ride after working hours. We observed that "[i]t is axiomatic that an employer is not liable for the acts of an employee when those acts are undertaken outside the scope of employment." *Palestina, supra,* at 440 (citing, *inter alia, Normand v. City of New Orleans,* 363 So.2d 1220, 1222 (La.App. 4th Cir.1978), *writ denied,* 366 So.2d 573 (La.1979)). First, we are persuaded that it is for the trier of fact, under the principles of Louisiana tort law, to decide whether crew members of the M/V Jaymat Trident were acting within the scope of their employment in their dealings with the decedent.[4] *See Manale v.*

---

**3.** *See infra* note 4.

Whether the *Kermarec* standard or the duty of humane treatment is applicable depends upon the facts of a case. For example, on one end of the scale, if the factfinder determines that a person is a stowaway and the owner or operator had no knowledge of his presence onboard (until discovery) or of a customary practice to render passage to such a person, then the duty of humane treatment applies. On the other end of the scale, if there is a customary practice to render passage to non-stowaways and the owner or operator has knowledge of this practice, then the *Kermarec* standard applies. Because we merely hold here that a material issue of fact exists precluding summary judgment, we leave it to the district court to determine in the first instance the applicable standard of care.

**4.** In *Lewis v. State Board of Institutions,* 176 So.2d 718 (La.App. 1st Cir.1965), the court held the state liable under the doctrine of *respondeat superior* for the death of a juvenile delinquent who died as a result of a flogging administered by correctional institution employees deemed to be acting within the scope of their employment because those in charge of the institution knew or should have known that it was the practice of employees to flog inmates for striking their supervisors. *Lewis* stands for the proposition that employers cannot avoid liability for the negligent conduct of their employees merely by looking the other way.

Nor will the promulgation of a company rule or policy forbidding an activity excuse the employer's inaction when he knows or should know that his employees are engaging in that activity. "[T]hat an employee's conduct violates the employer's express rules is not conclusive of the issue of scope of employment." *Normand v. City of New Orleans,* 363 So.2d 1220, 1222 (La. App. 4th Cir.1978). *See also Poydras v. Parker,* 392 So.2d 94, 96 (La.App. 1st Cir.1980); *Cain v. Doe,* 378 So.2d 549, 550 (La.App. 4th Cir.1979).

Although these decisions each makes this observation in addressing the issue of scope of employment, the principle applies with even greater force when the employer fails to enforce his own rules. We are mindful and do caution

*City of New Orleans, Department of Police*, 673 F.2d 122 (5th Cir.1982) (discussing *Lebrane v. Lewis*, 292 So.2d 216 (La.1974) (Tate, J.), in applying Louisiana law on scope of employment). Second, resolution of the scope-of-employment issue does not resolve whether Stanship or Trident should be held liable for its *own* negligence in implicitly permitting acts of its employees that create unreasonable risks of harm to persons like the decedent.[5] *See generally* W. Prosser, *Law of Torts* § 70 (1974).

Hence, the issue whether summary judgment was proper in the instant case is reduced to one of the sufficiency of Buchanan's affidavits in stating that it was a customary practice for the M/V Jaymat Trident to carry persons from Jamaica to the United States. The affidavits submitted by Stanship and Trident state that the companies were not aware of any other incident in which the M/V Jaymat Trident and its officers and crew had been involved in stowing away anyone other than the decedent. In their affidavits, both Buchanan and Percy Todd attest that they had personal knowledge of this practice. Buchanan's attestation probably constitutes hearsay and is not proper evidence for a district court to consider in ruling on a motion for summary judgment.[6] C. Wright, A. Miller & M. Kane, *supra*, § 2738. In his affidavit, Percy Todd testifies that he actually witnessed the exchange between the decedent and the M/V Jaymat Trident's boatswain mate in which the decedent paid the boatswain mate a sum of money in American dollars to secure passage to the United States. Todd also testifies that he sailed on the Trident-owned sister ship of the M/V Jaymat Trident. These statements do not contain hearsay and would be admissible at trial. These statements should be considered in assessing the propriety of summary judgment without regard to other portions of Todd's affidavit that may not be admissible at trial. *Lee v. National Life Assurance Co.*, 632 F.2d 524 (5th Cir.1980), *reh'g de-*

---

that such a fact has not yet been proved in the instant case. We merely address the issue whether Buchanan should have the opportunity to do so at trial.

**5.** The *Restatement (Second) of Agency* provides that an employer should be liable for harm resulting from his own negligent or reckless conduct "in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control." *Restatement (Second) of Agency* § 213(d) (1958). Comment *i* to § 213 explains:

   i. *Acquiescence in tortious conduct.* A master is subject to liability as the possessor of premises for conduct of a servant thereon, or in fact the conduct of anyone, to the continuance of which he consents after he knows or should know that such conduct contains an unreasonable risk of harm to licensees or those upon adjacent roads or premises. Failure on the part of the possessor of premises to prevent negligent conduct thereon by others does not necessarily make him responsible. If, however, being in control of the premises and of the persons acting by the fact that he is their principal or master, he does not object to dangerous conduct, his inaction may cause him to be liable to persons harmed by it. In such case, liability is based not merely upon the fact that he is the possessor of things which he is under a duty to prevent from harming another, ... but upon the fact that by permitting another to use them in a dangerous manner he is aiding the dangerous conduct.

In the instant case, if it is found that Trident or Stanship failed to conform its employees' conduct to the company rules against rendering passage and that such conduct amounted to a customary practice in which Trident or Stanship implicitly acquiesced, § 213(d) suggests that Trident or Stanship should be held liable for the harm to any person resulting from the dangerous conduct of its employees.

**6.** The district court correctly noted that the affidavits submitted by Buchanan contain "substantial hearsay testimony." Nevertheless, "[t]he rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." *Lee v. National Life Assurance Co.*, 632 F.2d 524 (5th Cir.1980). Despite Buchanan's assertion that she had personal knowledge of the vessel's practice of aiding stowaways, there is no statement in the affidavit or the record taken as a whole that would indicate that she had opportunity to have knowledge of this practice except through the statements of others. In contrast, affiant Percy Todd may very well have had such personal knowledge.

*nied,* 635 F.2d 516 (5th Cir.1981). Moreover, the admissible statements by Todd establish that he was competent to declare that he had "personal knowledge that the local Jamaican citizens frequently travel to the United States on the Jaymat Trident by paying and that the fare is always to be paid in American dollars."

What standard of care is applicable in this case and whether Trident or Stanship breached its duty of care toward the decedent are issues that cannot be resolved without determining whether crew members customarily rendered passage to persons in the M/V Jaymat Trident and whether Stanship or Trident knew or should have known of this practice. We hold that whether Stanship or Trident knew that its employees customarily rendered passage to persons in the M/V Jaymat Trident is a genuine issue of material fact which operates to preclude summary judgment.

On appeal, Buchanan does not dispute the district court's holding that the decedent was not a Jones Act seaman. Thus, we do not disturb that portion of the district court's summary judgment. We reverse the judgment in all other respects [7] and remand the case to the district court for proceedings not inconsistent with this opinion, each party to bear his own costs.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.

---

**7.** In the interest of "good judicial administration," *Poller, supra,* at 474, 82 S.Ct. at 491, 7 L.Ed.2d at 465, we need not address the merits of Buchanan's strict liability allegation, nor do we address the issue whether the decedent should be classified a stowaway.