LOBRANO, Judge.
This appeal is taken from a lower court judgment rendered in favor of Bayou State Security Services, Inc. (Bayou State) and its insurer, Midland Insurance Company (Midland) and against Steven Toomer (Toomer). The judgment dismissing Toomer’s claims was rendered pursuant to a jury verdict.
The issue presented for our review is whether or not Bayou State’s employee, Johnny Cash (Cash) was in the course and *166 scope of his employment when he shot Toomer.[1]
The original suit filed by Toomer named Cash and American Can Company as additional defendants, however they were dismissed from the proceedings prior to trial and are no longer parties to this action. PACTS:
Cash was employed by Bayou State as a fire-watch guard at the vacant Jax Brewery warehouse on Decatur Street in the City of New Orleans. This assignment was an unarmed assignment, and Bayou State forbid its employees to carry weapons, and did not provide Cash with a gun. Cash, believing the assignment was dangerous, armed himself with his own personal gun in direct contravention of his employer’s orders. Bayou State was unaware that Cash carried a gun.
In the early morning hours of July 13, 1978 while inspecting the outer periphery of the warehouse adjacent to the ramp leading to the riverfront Moonwalk, Cash observed several individuals being chased and mugged by three youths. Cash proceeded up the ramp in an attempt to stop the attack at which time the youths turned on him. Asserting self defense, Cash pulled the gun from his waistband and fired at the youth directly in front of him. The bullet missed and struck Toomer, seriously injuring him.
Toomer argues that the jury was clearly wrong in finding that Cash was not within the course and scope of his employment when the shooting occurred.. Specifically, he urges that since the jury found that Toomer did not participate in the attack on Cash and since Cash was making his normal rounds when he observed the attack, his actions clearly fall within his employment duties. In effect, he argues that the jury relied too heavily on the fact that Cash deviated from his employer’s instructions in reaching their conclusion, citing Scott v. Commercial Union Insurance Co., 415 So.2d 327 (La.App. 2nd Cir.1982) and McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984). Toomer suggests that only where there is personal animosity between the tortfeasor and the victim will the tort-feasor’s action be considered outside the scope of employment.
Civil Code Article 2320 provides in pertinent part:
“Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.”
Whether an employee is within the course and scope of his employment at the time given tortious conduct occurs presents a question that is not answerable except by general rules, given the myriad of contexts in which it might arise. Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir. 1983), writ denied.
The specific question that must be determined is whether the employee’s conduct “was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interests.” Daniels v. Conn, 382 So.2d 945 (La.1980); LeBrane v. Lewis, 292 So.2d 216 (La.1974); Johnson v. Dufrene, supra. Among the factors to be considered in determining an employer’s responsibility for the tort of an employee, are:
“... the time, place and purpose of the act in relation to service of the employer, the relationship between the employee’s act and the employer’s business ... and the reasonable expectation of the employer that the employee would perform the act.” Michaleski v. Western Preferred Casualty Company, 472 So.2d 18 (La.1985), at 21.
We agree with Toomer that reliance by the jury on the fact that Cash disobeyed his employer’s orders, standing alone, is insufficient to exonerate the employer. *167 See, Normand v. City of New Orleans, 363 So.2d 1220 (La.App. 4th Cir.1978); Bordelon v. Great American Indemnity Company, 124 So.2d 634 (La.App. 3rd Cir.1960). However, the record substantiates several other factors supportive of the jury’s conclusion.
First, the shooting occurred off the warehouse preipises. Although Toomer urges that the route taken by Cash to get to the rear of the premises was one of several accepted routes, clearly the evidence substantiates that the incident occurred in an area where Cash was not required to be. Cash’s duties did not include guarding the ramp or the general public. He was employed as a fire-guard to protect the vacant warehouse from the possibility of fire. The ramp was not part of the warehouse premises.
Second, there was no evidence that Toomer or his companions were ever on the warehouse premises or had attempted to trespass on the warehouse property. Cash’s actions were not precipitated by any conduct related to his duty to protect the warehouse.
Third, Cash armed himself in direct contravention of Bayou State’s instructions, and there is no evidence that Bayou State knew Cash was carrying a gun.
Citing footnote 4 in LeBrane v. Lewis, supra, Toomer argues a distinction in the terms “course of employment” and “scope of employment”. He asserts that since the accident occurred during the normal hours of employment and while Cash was on duty, then he was definitely in the “course of his employment”. Therefore, he urges this Court to conclude that Cash’s actions were also in the scope of his employment since they were not motivated by personal interests, but were in self defense.
We disagree with this argument. • Toomer attempts an interpretation of “course and scope” that is not suggested by the jurisprudence. The issue must be decided, not by “pigeon holing” selected facts, but by a review of the entire factual context. The incident did occur during Cash’s normal employment hours. However, the other factors previously pointed out must also be taken into consideration. There is no doubt this is exactly what the jury did.
We therefore, cannot say that the jury was clearly wrong in its decision. Neither Cash’s initial contact with Toomer, nor his “Good Samaritan” deed in aiding a citizen not on the warehouse premises were in any way connected with his employment duties as a fire watch guard. We cannot reverse the jury’s findings absent manifest error.
For the above and foregoing reasons we affirm the lower court judgment.
AFFIRMED.

. The jury returned a unanimous verdict that Cash was not in the course and scope of his employment when the shooting occurred.