*In re* MARRIAGE OF PAMELA E. COOPER, a/k/a Pamela E. Radick, Petitioner-Appellee, and THOMAS WILLIAM COOPER, JR., Respondent-Appellant.

First District (5th Division)    No. 81-1265

Opinion filed December 28, 1981.

John E. Cunningham, of Chicago, for appellant.

Carl A. Champagne, of Chicago, for appellee.

JUSTICE WILSON delivered the opinion of the court:

Respondent appeals from the trial court's order granting petitioner's request for increased child support payments. Respondent contends that, in modifying the support payments, the trial court erroneously disregarded several relevant considerations under section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 505). We reverse and remand.

Respondent and petitioner were married in 1965. Three children were born during their marriage. The marriage was dissolved on June 8, 1971. Pursuant to the divorce judgment, respondent was ordered to pay $65 per week for child support. At the time, he was earning $165 per week and petitioner was earning approximately $100 a week. The support payments were modified to $60 a week within a year of the divorce judgment.

On December 18, 1980, petitioner filed her request for an increase in child support payments, alleging an increase in the children's financial needs and a corresponding increase in respondent's ability to pay. Respondent denied the allegations.

A hearing on the petition was held on May 1, 1981. Both parties filed income and expense affidavits and testified at the hearing. Petitioner stated that she had remarried and had two children as a result of the second marriage. The three children of the parties' marriage, at the time of the hearing, were 11, 12, and 14. Petitioner testified that her expenses for them have doubled since the 1971 divorce judgment. They now go to private school, which costs at least $220 per month.[1] Petitioner claims that out of her total monthly expenses of $2,220, $1,500 goes for the children's expenses. She also testified that she lives in a two-story, five-bedroom

---

[1] Respondent states that the private school expense is $90 a week, which would total $360. The $220 figure is listed on petitioner's expense affidavit, which shows the average expenses for April of 1980. There is a reference in the report of proceedings to an amended affidavit, but it does not appear in the record.

residence with her husband and five children. Because she stays at home to care for the five children, she only works part-time as a wallpaper hanger. Her monthly earnings range from $65 to $80.

Respondent, a police officer for over 13 years, earns $1,942.07 monthly gross salary, or $1,342.71 after deductions. His affidavit reflects total expenses of $1,478.08. At the hearing he testified that he sometimes works overtime, which could be averaged at approximately $150 per month. In addition, he earns $50 a month from a part-time job. He has remarried and has one child from his present marriage. He testified that his current wife went to work full time in 1981 to help meet the expenses.

At the conclusion of the hearing, the trial court found respondent's net monthly income to be $1600 and that 34% of this amount was a fair basis for the support modification. Respondent appeals from that order.

OPINION

Respondent charges that the trial court disregarded the evidence and arbitrarily calculated a percentage of respondent's income as the basis for the increase, thus ignoring his actual ability to pay. In so doing, the court violated the purpose of section 505(a) of the Act, which provides that the court may order either or both parents to pay a necessary and reasonable amount of support "after considering all relevant factors, including: (1) the financial resources of the child; (2) the financial resources and needs of the custodial parent; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional needs of the child, and his educational needs; and (5) the financial resources and needs of the noncustodial parent or parents." Respondent argues that the court failed to consider that the three children's standard of living has actually risen because they now live in a five-bedroom house and go to private schools, whereas if the marriage had remained intact, the children would not enjoy such benefits. In addition, he argues that the court failed to consider his expenses and the needs of his second family.

Under the Illinois Marriage and Dissolution of Marriage Act, child support may be modified only upon the showing of a substantial change of circumstances. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a); *In re Marriage of Schmerold* (1980), 88 Ill. App. 3d 348, 410 N.E.2d 629.) To establish such change as would warrant an increase in support, petitioner must show that the children's needs and the noncustodial spouse's ability to pay have increased. (*In re Marriage of Adams* (1981), 92 Ill. App. 3d 797, 416 N.E.2d 316.) In assessing the children's increased needs, it is proper to consider that they have grown older and that the cost of living has risen, but this must be balanced against the relative ability of the parents to

provide for the children. (*Schmerold.*) Moreover, "[i]t is an abuse of discretion to consider only the father's income when determining the issue of child support and to ignore the statutory language specifying that the circumstances of the parties should be considered in determining what arrangements would be reasonable and proper." *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1115, 421 N.E.2d 1308, 1315.

In this case, the parties did file expense affidavits and did testify in court. Nevertheless, the transcript of the May 1, 1981, hearing on the modification petition indicates that the trial court's consideration of relevant factors under section 505(a) was minimized in favor of the percentage-of-income formula. At the beginning of the hearing the judge told the attorneys that they were "too busy" to spend time in court and that they should follow his guidelines because the court follows them "99% of the time." The judge further stated, however, that there were other considerations and "under no circumstances would he be locked in on guidelines." After hearing testimony and considering the affidavits, the court found that respondent's net monthly income was $1600 and, taking 34% of that figure, ordered him to pay approximately $125 per week in child support.

■■ We recently held that section 505(a) of the Act "does not provide for a normal or standard rate of child support based on a percentage of the noncustodial parent's income. Rather, the amount of child support is to be determined by accommodating the needs of the children with the available means of the parties." (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1114, 421 N.E.2d 1308, 1313.) In *Brophy*, the trial court had ordered the husband to pay $500 per month, or approximately 36% of his "spendable income." The trial court went on to state that he used this "low figure" because the husband was remarried and had another child to support, but that normally, the support award would be 40%. On appeal, the husband successfully argued that basing the award on a standard percentage of his income was an abuse of discretion. We noted in *Brophy* that, although specific findings are not required, it is imperative for the record to indicate that the trial court considered the section 505(a) factors.

■■ The record in the present case reflects that there was some evidence of both parties' income and expenses before the trial court. We cannot presume that the trial court utterly disregarded respondent's expenses and obligations to his second family. Nevertheless, we find that the amount of the award in this case is not supported by the evidence, and, to the extent that the trial court perhaps overemphasized the percentage of the income formula, we must reverse the order and remand for a new hearing.

Respondent's expense affidavit indicates monthly gross income of $1,942.07, net income of $1,342.71, and total expenses of $1,478.08.

Although he testified to earning an additional gross monthly amount of $200, based on his fluctuating overtime plus a part-time job, we agree that the trial court's finding of $1600 net or take-home pay is somewhat inflated. Even assuming that $1600 approximates respondent's spendable income, however, we note that after subtracting his expenses of $1,478.08, he would have only $122 per month left. This "surplus" amount is substantially less than the court-ordered increase of $285 per month. While the increase in a spouse's income is an important consideration in modifying child support, it is clearly not the sole factor under section 505(a) of the Act. Therefore, we do not believe that the mechanical application of a percentage formula in this case yielded a just determination of respondent's ability to pay.

Furthermore, we note that while petitioner testified to expenses for the children of $1500 per month, her affidavit reflects the much smaller sum of $496.25 (which includes a presumably nonrecurring expense of $107 for eyeglasses). This sum is for the clothing, education, medical, and personal expenses of the children. The rest of their expenses, apparently, are based on a pro-rated calculation of the mortgages, taxes, utilities and like costs. It is not clear from petitioner's affidavit or testimony, however, what percentage of these costs should be allocated to the three children and what portion is for petitioner and her second family.

Hence, we cannot determine with any certainty how much the children's needs have actually escalated. It is true that petitioner did not request an increase in 10 years and it is quite probable that their needs have increased in that time. Indeed, respondent does not seriously question that their needs have increased. He maintains, however, that at least part of their expenses, such as the private school tuition, should not be chargeable to him. He argues that he cannot afford private school tuition and that had the marriage between him and petitioner continued, the children would not be able to attend private school on his salary. We have held that a court may order a supporting spouse to pay for private schooling, under certain circumstances, even if there are public schools available. (*Greiman v. Friedman* (1980), 90 Ill. App. 2d 941, 414 N.E.2d 77.) We qualified this statement by recognizing that the child does not have unlimited discretion to attend a private school at her father's expense and that a court in some circumstances might find it inequitable to require a father to pay the greater expenses. We further noted, in holding that the expenses of "second families" are relevant, that when divorced spouses remarry, they are likely to "pool their resources with those of their second spouses, so that their assets and liabilities are substantially intertwined." (*Greiman v. Friedman* (1980), 90 Ill. App. 2d 941, 949, 414 N.E.2d 77, 84.) We conclude that in the instant case, the financial resources and liabilities of both parties were not adequately determined. In view of the court's

reliance on the percentage formula, therefore, we reverse the judgment of the trial court and remand the cause for a new hearing.

Reversed and remanded for further proceedings consistent with this opinion.

SULLIVAN, P. J., and MEJDA, J., concur.