*In re* MARRIAGE OF MARY SUSAN RUNDLE, Petitioner-Appellant, and RONNIE RAY RUNDLE, Respondent-Appellee.

Fifth District   No. 81-306

Opinion filed July 14, 1982.

George E. Ginos, of Hillsboro, for appellant.

Michael B. White, of Hillsboro, for appellee.

JUSTICE JONES delivered the opinion of the court:

Petitioner, Mary Susan Rundle, appeals the judgment of the trial court, which dissolves the marriage of the parties, awards custody of the minor child to petitioner, requires respondent, Ronnie Ray Rundle, to pay $50 per week child support, disposes of the property of the parties, denies maintenance to either party and requires each party to pay his or her own attorney fees. Petitioner raises several issues, among them the correctness of the trial court's reliance upon a chart or schedule in making the award of child support and his failure to hear evidence as to her living expenses. Petitioner also questions the denial of her requests for maintenance and attorney fees as well as the trial court's finding that a mobile home together with approximately 3½ acres upon which it is located is nonmarital property owned by respondent.

Petitioner maintains that the use of a chart or schedule to fix an award of child support, without the aid of evidence of her living expenses, violated section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 505(a)) (hereinafter the Act), which provides that the court may order payment of child support "after considering all relevant factors, including:

(1) the financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents."

At the hearing on the property disposition the following exchange took place between petitioner's attorney and the trial court:

"MR. GINOS [attorney for petitioner]: Your Honor, if I may ask you. You indicated earlier that the Court felt that $50.00 a week was, I don't know if it was a rule of thumb or a decision in this case?

THE COURT: It's like basically a rule of thumb, however at that time I thought they said $250.00 [as respondent's earnings] a week.

MR. GINOS: Yes, sir, and I have not put any evidence on as to the monthly expenses of my client.

THE COURT: That is a hard rule of thumb. I have got a schedule I use and try to be consistent in all cases and it is just purely based on that income, it works out, came out to the same, within that range of $50.00 per week."

Later the following colloquy was had between Mr. Ginos and the court:

"MR. GINOS: Your Honor, I would, I believe I would like to have Mrs. Rundle testify to her expenses unless the Court feels that based on what your chart, however, and based on his income that her expenses really don't make any difference?

THE COURT: I don't want to preclude you from putting on, generally it would fall within a range based upon his income as far as child support is concerned. If there are any extraordinary expenses I would certainly want you to put that on.

MR. GINOS: Nothing other than ordinary living expenses and babysitter costs and that sort of thing, Your Honor."

No evidence of petitioner's living expenses was introduced. She contends that any attempt by her to put on such evidence in the face of the trial court's expression of reliance upon a schedule would have been fruitless. In evidence was the amount of petitioner's weekly income, $80, gleaned from mowing lawns and cleaning houses. Also in evidence was the amount of respondent's net weekly income, about $265 or $270. However, no evidence of his expenses was introduced.

Respondent has included in his brief as "Exhibit X" a copy of a detailed, two-page chart or schedule labeled "Family Support Chart." The chart includes the net income of the noncustodial parent and the number of children to be supported. Above one of the seven columns of the chart are the words, "Net Income for Week." In that column the first figures listed are "$80-90" and the last are "591-600." Fifty such salary ranges are listed between the first and last figures. Above the other six

columns are the words "One" through "Six" respectively, referring to the number of children involved. At the top of the chart is what appears to be the means of defining net income for purposes of the chart; however, the copy is not a good one, and only some words such as "Income Tax," "F.I.C.A.," "Life Insurance" and "Union Dues" are adequately legible. In each of these columns on each line corresponding to salary appears a dollar figure.

Although our research has not disclosed any cases dealing with the use of a chart or schedule to determine an award of child support, we find the reasoning helpful in the cases of *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308, and *In re Marriage of Cooper* (1981), 102 Ill. App. 3d 872, 430 N.E.2d 379, where in each case the award of child support was based upon a certain percentage of the noncustodial parent's income. In *Brophy* the trial court had considered only the noncustodial parent's spendable income, ordering a certain percentage of that amount to be paid as child support. To consider only the father's income and to ignore the statutory language setting forth the factors to be considered in awarding child support was found on review to be an abuse of discretion, and the order for child support was not permitted to stand. In *Cooper*, although the record showed that there was before the trial court some evidence of both parties' income and expenses, the reviewing court found the amount of the award not supported by the evidence, and because of the trial court's reliance on the percentage formula, the judgment was reversed and the cause remanded for a new hearing.

As was said in *Brophy*, the amount of child support is to be determined by accommodating the needs of the child with the available means of the parents. Although the determination of the amount of child support lies within the sound discretion of the trial court, the amount of the award is to be determined by the facts and circumstances of each case. (*Brophy*.) While specific findings are not required, there must be some indication in the record that the trial court considered the factors listed in section 505(a). *Brophy*.

■■ In *Brophy* there was "no indication that the court considered either the actual needs of the children or petitioner's needs in making its determination." (96 Ill. App. 3d 1108, 1115, 421 N.E.2d 1308, 1313.) So, too, in the case at bar there is no indication in the record that the trial court considered the needs of either the child or the custodial parent in making its determination. Indeed, there is evidence in the record that the trial court did not consider these needs. In the chart or schedule used here, the court considered the resources but not the needs of the noncustodial parent in contravention of the statutory requirement that the court consider "the financial resources and needs" of that parent. Use of this chart assures violation of the further requirement that the court must

consider any financial resources of the child. Furthermore, to state the obvious, no chart can provide information as to the remaining factors a court is required to consider, namely, the standard of living the child would have enjoyed had the marriage not been dissolved and the physical and emotional condition of the child together with his educational needs. Although respondent lauds the trial court's use of such schedules, encouraging their use "in the interest of judicial economy and consistency," we are not so sanguine about them. Reliance upon a chart or schedule necessarily results in a court's failure to consider all of the factors section 505(a) requires it to consider in making an award of child support. In short, following a chart precludes following the statute.

Because the amount of an award of child support must be determined by the facts of each case with respect to the needs of the child and the circumstances of the parents, it was error for the trial court to substitute a predetermined schedule for evidence of these needs and circumstances. A court relying upon this particular chart would, by virtue of the fact that it includes only the income of the noncustodial parent, award the same amount of child support whether the custodial parent's weekly income was $80, as here, or $800. The ramifications of such an approach are obvious. A court cannot avoid the responsibility of fixing the amount of an award of child support by resorting to a chart in lieu of hearing evidence. The trial court's indication that the schedule in question would be controlling, absent evidence of extraordinary living expenses on the part of petitioner, was necessarily intimidating to her insofar as putting on evidence of her living expenses was concerned, and the use of the schedule in lieu of such evidence contaminated the decision of the court as to the award of child support. Reliance upon the chart in making the award of child support was an abuse of discretion by the trial court, and the judgment must be reversed and the cause remanded for a hearing on this issue.

■■■ We think that the decision as to maintenance and attorney fees was likewise contaminated by the failure of the trial court to hear evidence of petitioner's living expenses. Section 504(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)) provides that a court may grant an order of maintenance for either spouse only if it finds that the spouse seeking maintenance lacks sufficient property "to provide for his reasonable needs * * *." To determine whether a spouse has sufficient property to meet his or her reasonable needs, the court must have knowledge of those needs. Thus, it was error for the trial court to fail to obtain knowledge of petitioner's needs by means of hearing evidence of her living expenses prior to denying her request for maintenance. Similarly, section 508 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 508) provides that a court may order either

spouse to pay a reasonable amount for his own costs and attorney fees and for the costs and attorney fees necessarily incurred by the other spouse "after considering the financial resources of the parties." Surely no one would argue that in the making of such a determination financial resources may be considered meaningfully without reference to the expenses those resources must cover. The awarding of attorney fees lies within the sound discretion of the trial court and will not be reversed on review unless the trial court has plainly abused its discretion. (*In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 407 N.E.2d 802.) We think that the trial court's denial of petitioner's request for attorney fees without hearing evidence of her needs as well as her income constituted an abuse of discretion. Consequently, the cause must be remanded for a new hearing on the issues of petitioner's requests for both maintenance and attorney fees.

With respect to the finding that the mobile home and the lots comprising the 3½ acres were nonmarital property, at the hearing respondent testified that he had acquired the lots in question by gift in 1974. The land had belonged to respondent's grandfather. Upon his death respondent's mother acquired it and subsequently gave it to respondent. Also in 1974, apparently with his first wife, respondent purchased the mobile home located on the property. In July of 1977 petitioner and respondent were married. During the course of the marriage they resided in the mobile home. In November of 1977 respondent executed a quitclaim deed to the property, conveying it to petitioner and himself in joint tenancy. Respondent testified as to the circumstances under which he conveyed the property to petitioner and himself as follows:

"A. Well, she kept saying that I should have her name on the land, that she should have her name on everything and repeated times she said that. And after a while it got to be an issue, every time it come [*sic*] up we got in a big argument. So, finally after all these times of wanting her name and things I finally gave in and said I will put your name on the land.

Q. [Attorney for respondent]: She didn't pay you anything for it?
A. No.
Q. You didn't intend to give her anything, did you?
A. No.
Q. You deeded the land to her to quiet her down, these complaints that she had?
A. Yes."

As to the circumstances of the conveyance petitioner testified that at the time she was pregnant and that she and respondent, having decided the trailer was too small for their growing family, were thinking of building a house. She testified that she had asked respondent "on numerous occa-

sions" to place the property in both their names "[b]ecause his first wifes [*sic*] name was on everything" and his first wife had "signed a quitclaim deed to the land when they got divorced, but her name was on everything else," including the title to the trailer. The wheels of the trailer have been removed, and the trailer, which has cement steps, is on blocks and a "cement pad." At the time of the hearing the mobile home was not yet paid for. The trial court found the property nonmarital property owned by respondent but "that during the marriage of the parties, payments were made on the mortgage on the property and the equity accrued thereby is marital property."

Petitioner relies in her brief upon *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 222-23, 422 N.E.2d 635, 638, where the supreme court stated in determining whether the husband should have been assigned an interest in the jointly held marital residence equal to the amount of nonmarital funds he had provided for its purchase:

> "The new act incorporates a partnership theory of marriage. [Citations.] The Act does not purport, however, to change the law regarding interspousal transfers of property owned individually. It does not indicate, by implication or otherwise, any dissatisfaction with prior cases in which the intention of a spouse conveying property was ascertained. It may be anachronistic now to refer to an intent to convey a gift to the other spouse, but it is not improper to refer to an intent to convey a gift to the marriage. Therefore, a marital residence owned by both spouses, even if one spouse has furnished all of the consideration for it out of nonmarital funds, will be presumed 'in fact' as marital property, absent convincing rebutting evidence. [Citations.]"

Petitioner urges that "no convincing evidence was presented in this case to rebut the presumption." Respondent argues that "the evidence presented regarding a lack of donative intent and the failure of Mrs. Rundle to realize any intention of a gift is sufficient to rebut the presumption." We notice that *Rogers* was filed after the trial court had ruled that the mobile home together with the lots on which it was located was nonmarital property and after the trial court had denied petitioner's motion to reconsider. Although the trial court did not indicate in the record that he was following *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, and *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332, his ruling is consistent with the decisions in these two cases, made by us prior to the decision by the supreme court in *Rogers* holding to the contrary. Since we are remanding the cause on other grounds, we think that in the interest of uniformity and consistency *Rogers* should be followed. We agree with petitioner that respondent failed to rebut with convincing evidence the presumption that the land as improved with the

mobile home is marital property. Therefore the mobile home and lots must be deemed to be marital property, and upon remand disposition should be made accordingly. In order to assure distribution in "just proportions," as mandated by section 503(c) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)), the trial court should upon remand review all inter-related property and support awards. See *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146.

For the foregoing reasons we affirm the judgment of the trial court, insofar as it declares the marriage dissolved and awards custody of the minor child to petitioner, but we reverse those parts of the judgment concerning (1) the disposition of the parties' property, (2) the amount of the award of child support, (3) the denial of petitioner's request for maintenance and (4) the denial of her request for attorney fees, and we remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

HARRISON and KASSERMAN, JJ., concur.