*In re* MARRIAGE OF ELIZABETH A. BLAISDELL, k/n/a Elizabeth A. Boris, Petitioner-Appellee, v. WILLIAM S. BLAISDELL, Respondent-Appellant.

First District (2nd Division)   No. 84—3088

Opinion filed April 29, 1986.

Richard Gigante, P.C., of Chicago (Paul R. Jenen, of counsel), for appellant.

Aviva Futorian, of Illinois Task Force on Child Support, and Robert P. Burns, of Northwestern Law School, both of Chicago, for appellee.

Lewis A. Hoffman, of Dunedin, Florida, for *amicus curiae* Men International, Inc.

Marygold Shire Melli, of University of Wisconsin Law School, of Madison, Wisconsin (Nancy Polikoff, of counsel), for *amicus curiae* Women's Legal Defense Fund.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

This is an action commenced in June 1984, by petitioner, Elizabeth Boris, a divorced, custodial parent, to obtain a modification of a child-support order that had been originally awarded in 1979 pursuant to a dissolution of marriage. Following hearings in October and November 1984, the trial court found that petitioner had shown a substantial change in circumstances. The trial court found further that an increase in the support order was justified in an amount authorized by section 505(a) of the Illinois Marriage and Dissolution of Marriage Act, which

had become effective on September 12, 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)). The court ordered an increase in monthly child-support payments.

Respondent, William Blaisdell, appeals the trial court's award. The issues presented for review are:

(1) whether section 505(a) violates any of the following provisions of the Federal or Illinois constitutions:

(a) 1970 Illinois Constitution, article II, section 1, and article IV, section 1, concerning the separation of powers and the vesting of the judicial power in the State courts,

(b) 1970 Illinois Constitution, article IV, section 13, prohibiting special legislation,

(c) 1970 Illinois Constitution, article I, sections 2 and 18, and United States Constitution, amendment XIV, clause 1, prohibiting deprivation of property without due process of law and prohibiting denial of equal protection of the laws, and

(d) 1970 Illinois Constitution, article I, section 12, providing a right to a remedy for injuries;

(2) whether the trial court abused its discretion in finding that an increase in child support was warranted; and

(3) whether the trial court abused its discretion in applying the statutory guidelines of section 505(a) and in finding no justification for deviating from the guidelines.

The judgment of dissolution of marriage was entered in 1979. Under the terms of the judgment, which incorporated the parties' agreement, petitioner was awarded custody of the couple's two-year-old son, Bart. Respondent was to pay $275 a month in child support, and both parties waived maintenance.

On June 8, 1984, when Bart was seven years old, petitioner filed a motion for an increase in respondent's child-support payments, alleging both that the child had increased needs and that respondent had increased income. The trial court held hearings on the motion on October 17 and November 9, 1984. The evidence revealed that petitioner had a net monthly income of $2,046 and that respondent's current net monthly income was $1,986. The income for each party had increased since the entry of the judgment of dissolution.

Petitioner also introduced evidence showing that the needs of their son had increased. This was attributable to higher expenses for school tuition, camp, child care and counseling.

The trial court found that petitioner sustained her burden of showing the increased needs of Bart and the increase in respondent's ability to pay child support. The court also found that it "must follow the

guidelines established by the new law passed by the legislature." Finding that respondent's net monthly income was approximately $2,000, the court ordered child support increased from $275 per month to $400 per month.

Respondent's motion for reconsideration was denied. This appeal followed.

I

### The Challenged Statute

Section 505 of the Illinois Marriage and Dissolution of Marriage Act provides in part as follows:

"Sec. 505. Child Support; Contempt; Penalties. (a) In a proceeding for dissolution of marriage, legal separation, declaration of invalidity of marriage, a proceeding for child support following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or any proceeding authorized under Section 601 of this Act, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct, after considering all relevant factors, including:

(1) the financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his education needs; and

(5) the financial resources and needs of the noncustodial parent or parents

In cases involving child support alone, the court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Income (Net) |
|---|---|
| 1 | 20% |
| 2 | 25% |
| 3 | 32% |
| 4 | 40% |
| 5 | 45% |
| 6 or more | 50% |

\* \* \*

In cases wherein health/hospitalization insurance coverage is not being furnished to dependents to be covered by the support order, the court shall order such coverage and shall reduce net income by the reasonable cost thereof in determining the minimum amount of support to be ordered.

The above guidelines, including dependent health/hospitalization insurance coverage are binding in each case unless the court makes express findings of fact as to the reason for departure below the guidelines. The guidelines may be exceeded by the court without express findings or by agreement of the parties. If the total gross income cannot be determined because of default or any other reason, the court shall order maintenance or support or both in an amount considered reasonable in the particular case.

Debts owed to private creditors are not to be considered in establishing a support obligation. Previous support orders and maintenance orders may be considered if the obligor is paying them." (Ill. Rev. Stat. 1985, ch. 40, par. 505.)

Statutes will be construed to avoid an unconstitutional result. (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 131-32, 390 N.E.2d 835.) There is a presumption that the legislative enactments are constitutional, with the burden of clearly establishing the contrary on the party that asserts unconstitutionality. *Sayles v. Thompson* (1983), 99 Ill. 2d 122, 124-25, 457 N.E.2d 440.

LEGISLATIVE HISTORY

Respondent's constitutional challenge is based on the assumption that under section 505(a) courts are mandated to follow literally the schedule for child support. If this reading is correct, the function of the court is reduced to that of a computer or robot. In this case, the sole function of the court would be to determine the net income of the noncustodial parent, determine the number of children, and calculate the amount of child support by applying the percentage of net income stated in the schedule. However, respondent has failed to show that the statute can or should be read to effectively prohibit judicial discretion.

This fundamental failure to interpret correctly section 505(a), as amended by Public Act 83—1404, is clearly evident from the legislative history of Public Act 83—1404. Prior to the enactment of this legislation, the judges of the domestic relations division of the circuit court of Cook County adopted "Guidelines for Support and Mainte-

nance Orders," which stated:

"After numerous meetings the sitting Judges of the Domestic Relations Division have concluded it is desirable that all support orders be as uniform as possible where the facts are substantially the same. The judges have considered and reviewed guidelines established in the other 49 states, other Illinois Judicial circuits and the American Bar Association's studies and recommendations on the subject. In order to accomplish this end the judges of the division have decided to adopt GUIDELINES in setting support orders. The word 'Guidelines' cannot be emphasized enough since no judge intends to surrender his discretion in setting awards or waiving relevant factors which the court must consider under Chapter 40, Sec. 504 and 505 of the Illinois Revised Statutes. In addition, the court will continue to consider the tax consequences of such orders and any effect they would have upon 'Guidelines.'

The following guidelines are to be considered in establishing support order for 'typical' medium-income situations. Upward or downward adjustments may be made by the court, depending on the needs of the children, the debts assumed by the noncustodial parent and other extenuating circumstances and relevant factors. The income of the noncustodial parent is not the only and sole controlling factor.

The term 'net income' means gross income less mandatory deductions such as federal and state withholding taxes, FICA, medical insurance, mandatory pension contributions, etc. Payment on a debt to the company credit union is not a 'mandatory deduction.'

Thus, in an attempt to gain uniformity in support orders and promote amicable settlements the following per cent guidelines of the 'net income' of the supporting party will be considered as a 'starting point' by the sitting judges of the Domestic Relations Division.

I

CHILD SUPPORT ALONE

| Number of Children | Percent of Husband's Income (Net) |
|---|---|
| 1 | 20% |
| 2 | 27% |
| 3 | 35% |

| | |
|---|---|
| 4 | 42% |
| 5 | 50% |
| 6 | 55% |
| 7 or more | 55% |

As indicated previously, the support allowance determined under the basic formula should be adjusted upward or downward to reflect other relevant circumstances. ***"

(See Levin, *The Use (and Abuse) of Child Support Schedules in Illinois*, 71 Ill. B.J. 314, 330 (1983).) These guidelines provided the basis for Public Act 83—1404, which enacted slightly lower percentages. During the debates on the date of passage in the House of Representatives, the sponsor, Representative Vinson, said: "The Bill enacts a set of standards ***. Those standards are in essence the standards that Judge Fleck utilized *** in Cook County." House Debates, H.B. 3068, 83d Ill. Gen. Assem., May 17, 1984, at 193.

The following colloquy occurred during the debate:

"[REP. GREIMAN]: *** Representative Vinson, does this remove the discretion from the court in setting up the percentages?

[REP. VINSON]: No, Sir. What it does is it sets out a set of statutory percentages. The Judge may always enter an order in excess of the statutory percentages and he can, in fact, enter an order below the statutory percentages, *** he must enter a written statement of findings as to why he did that. What they really are are guidelines that can be changed up or down, but at least it's a set of statutory guidelines, and you have to have a reason for coming in below those guidelines.

* * *

[REP. BRUMMER]: Representative Vinson, with regard to these guidelines, how were they arrived at? Where did they come from?

[REP. VINSON]: They're basically the Fleck guidelines that are informally utilized in the Cook County Circuit Court currently." House Debates, H.B. 3068, 83d Ill. Gen. Assem., May 17, 1984, at 194, 199.

It is obvious that the legislature did not usurp any judicial function. On the contrary, it codified the procedure that was functioning successfully in the circuit court of Cook County. The guidelines merely provide a place to begin an analysis. No judge should, or properly could, surrender the responsibilities of considering all relevant factors dictated by Illinois law in reaching an appropriate result. *Matthews v. Matthews* (1976), 42 Ill. App. 3d 1049, 1053, 356 N.E.2d

1083.

Section 505(a) was amended again in 1985 by Public Act 84—888 and Public Act 84—979, which retained the same child support guidelines but emphasized the discretion vested in the courts. Subsections (a)(2) provided in part:

"(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. Relevant factors may include but are not limited to:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his education needs; and

(e) the financial resources and needs of the noncustodial parent." Pub. Act 84—888, sec. 2, eff. Sept. 23, 1985; Pub. Act 84—979, sec. 2, eff. Sept. 25, 1985.

■ The statute with which we are dealing in this case, section 505(a) as amended by Public Act 83—1404, is not ambiguous. The fact that the legislature did not delete the original five factors listed for determining child support awards means that the guidelines are not to be rigidly applied. The legislative history emphasizes judicial discretion. In spite of this abundance of clarity, if there were an ambiguity in Public Act 83—1404, it was cured with the subsequent enactment of Public Act 84—979. While this recent amendment was enacted too late to be in effect here, a subsequent amendment may be interpreted to indicate a legislative intent to clarify the law, rather than change it. *In re Marriage of Davies* (1982), 105 Ill. App. 3d 661, 668, 434 N.E.2d 357, *rev'd on other grounds* (1983), 95 Ill. 2d 474, 448 N.E.2d 882; see also, *In re Application of Rosewell* (1983), 97 Ill. 2d 434, 454 N.E.2d 997 (finding that the legislature acted in subsequent legislation to correct deficiencies that might otherwise suggest a lack of discretion in the court).

The guidelines legislation has, in reality, shifted the burden of presenting evidence in a child-support hearing to the parent who wishes to shift the noncustodial parent's contribution below or above the specified percentages. And the legislation has established standards for the court to follow in deviating from those percentages.

This flexibility in the law saves it against any of respondent's allegations of unconstitutionality. When considered in the light of this

legislative history, the answers to the constitutional arguments become apparent.

## SEPARATION OF POWERS

Respondent contends that section 505(a) violates the separation-of-powers requirement of article II, section 1, or article IV, section 1 of the 1970 Illinois Constitution. This argument is based on the erroneous assumption that the trial court has no discretion to also consider the five relevant factors in the statute in determining the level of child support payments.

■ In general, courts have struck down legislation as violative of separation of powers requirements where the legislation involved rules governing practice, pleading, procedure, appeals, or administrative matters that conflicted with judicially established rules. Courts have struck down legislation authorizing attorneys to conduct *voir dire* examinations of prospective jurors, where preexisting court rules gave the trial courts exclusive authority to conduct *voir dire* examinations. (*People v. Jackson* (1977), 69 Ill. 2d 252, 260, 371 N.E.2d 602.) The supreme court invalidated legislation requiring the court to notify all attorneys of record before permitting the *ex parte* dismissal of a case. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713.) Legislation that prohibited continuance of bail and stay of sentence after a forcible felony was held invalid where such legislation conflicted with court rules permitting those practices. (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495.) And legislatively ordered application of new legislation to cases decided before the effective date of the new legislation has been held to violate the separation of powers provisions of the Illinois Constitution. *In re Marriage of Davies* (1982), 105 Ill. App. 3d 661, 434 N.E.2d 357, *rev'd on other grounds* (1983), 95 Ill. 2d 474, 448 N.E.2d 882.

The legislation declared unconstitutional in the above examples is quite different from the legislation at issue in this case. The former involved procedural and administrative matters, traditionally the province of the courts. The child support guidelines involve application of substantive law and are no more an incursion into the power of the judiciary than was the prior provision for establishing child support awards under section 505.

Legislation similar to the law at issue here has been upheld against challenges of incursion into the powers of the judiciary. Thus, legislation establishing mandatory sentencing guidelines has been upheld. (*People v. Mathey* (1983), 99 Ill. 2d 292, 458 N.E.2d 499; *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 413 N.E.2d 1269; *Peo-*

*ple v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721, *appeal denied* (1981), 82 Ill. 2d 585.) Mandatory bifurcation of contested divorce trials with a 48-hour minimum wait has been upheld (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 60, 389 N.E.2d 1170 (jurisdiction of courts to determine divorce matters is conferred by statute)), as has mandatory retirement ages for judges (*Cusack v. Howlett* (1969), 44 Ill. 2d 233, 254 N.E.2d 506).

Determination of child support involves no inherent judicial powers. It is a power conferred on the courts by the legislature, like divorce. A legislative amendment that circumscribes judicial discretion in this area is no more an incursion into judicial authority than is the establishment of mandatory sentencing guidelines.

SPECIAL LEGISLATION

Article IV, section 13, of the 1970 Illinois Constitution prohibits the enactment of special legislation in the following terms:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination."

Respondent argues that the statute constitutes special legislation in violation of this constitutional provision. The very essence of special legislation is that "[i]t arbitrarily, and without a sound, reasonable basis discriminates *in favor of* a select group." (Emphasis in original.) *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38, 414 N.E.2d 458.

Special legislation is that which "confers a special benefit or exclusive privilege on a person or group of persons to the exclusion of others similarly situated" (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137, 414 N.E.2d 458). The prerequisite to special legislation is the existence of a group on whom a special benefit has been conferred. However, respondent has failed to identify a particular group upon whom the statute bestows a benefit to the exclusion of another group similarly situated. Section 505(a) is a general law that operates equally among all divorced parents. A general law is one that operates uniformly throughout the State in all localities on all persons in like circumstances and conditions. (*People ex rel. City of Canton v. Crouch* (1980), 79 Ill. 2d 356, 374, 403 N.E.2d 242.) In ordering child support, the court is required to consider all relevant factors in making its determination.

Public Act 83—1404 represents not merely a rational but in fact a very reasonable effort on the part of the Illinois legislature to allocate

some of the costs of child care between the parents when they divorce. Nothing is arbitrary in an act that prescribed certain minimum standards for the noncustodial parent but permits departure from those standards if necessary. Accordingly, section 505(a) is consistent with constitutional standards in article IV, section 13, of the 1970 Illinois Constitution.

## PROCEDURAL DUE PROCESS

■ Respondent next argues that the statute deprives him of procedural due process under both the Federal and State Constitutions. There is, of course, no doubt about the trial court's constitutional and statutory authority to enter a child-support order against a noncustodial parent. (See *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 360 N.E.2d 386, *appeal denied* (1977), 66 Ill. 2d 628; Ill. Ann. Stat., ch. 40, par. 505(a) (Smith-Hurd 1985 Supp.).) Such an order must not violate the due process clause because it involves a deprivation of property. (*Sniadach v. Family Finance Corp.* (1969), 395 U.S 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820.) Because factual issues must be resolved, there is a right to a hearing or other procedure. *Dixon v. Love* (1977), 432 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723; *Codd v. Velger* (1977), 429 U.S. 624, 51 L. Ed. 2d 92, 97 S. Ct. 882.

Procedural due process requires that a party be afforded notice and an opportunity to be heard and to conduct a defense. (*Nye v. Parkway Bank & Trust Co.* (1983), 114 Ill. App. 3d 272, 276, 448 N.E.2d 918.) The procedural protections afforded to respondent in the trial court far exceeded any which are constitutionally required. He had the benefit of a full, public evidentiary hearing, under the Code of Civil Procedure, prior to the "deprivation" about which he complains. He received adequate notice of the subject of the hearing, which was conducted before a neutral decision-maker, to whom he was entitled to present evidence and witnesses, subject to compulsory process, and to make legal argument himself or through an attorney. He was entitled to and did confront and cross-examine the only adverse witness, using documents obtained in regular civil discovery procedures, in an on-the-record hearing of which a transcript was prepared. The trial judge's decision was in writing, made findings of fact and drew conclusions of law. The decision resulted from an application of applicable law solely to the facts of record. Respondent's *procedural* due process rights were lavishly protected. See *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011.

Respondent cites *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208, in support of his attack on the statute.

But the Illinois statute in *Stanley* had two defects not present here. First, the statute created an irrebuttable presumption that unwed fathers of illegitimate children were unfit to raise those children and thus provided no hearing on the issue of their fitness and no opportunity to rebut the presumption. Second, the statute in *Stanley* was sex-specific, operating only against unmarried fathers. Neither mothers, wed or unwed, nor married fathers were subject to such a presumption.

In the instant case, no irrebuttable presumption operates. The statutory guidelines create a fully rebuttable presumption that a specified percentage of a noncustodial parent's income constitutes an appropriate child-support award. Section 505(a) operates in the same way regardless of the gender or marital status of the noncustodial parent.

Respondent also claims a violation of procedural due process from application of section 505(a)'s percentage guidelines to a child support modification without first finding a substantial change in circumstances. but that is not what happened here. The trial judge recognized the need to find a substantial change in circumstances as a precondition to determining the amount of any modified support order and found that petitioner had shown such a change.

Respondent also cites *In re Marriage of Rundle* (1982), 107 Ill. App. 3d 880, 883-84, 438 N.E.2d 229, and *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1115, 421 N.E.2d 1308, *appeal denied* (1981), 85 Ill. 2d 563, for the proposition that a trial court's use of schedules alone constitutes an abuse of discretion. That too has no relevance to this case. The "schedules" involved in those cases were not the ones contained in section 505(a) and were not, in fact, established by the legislature. More important, the trial courts in those cases relied exclusively on the guidelines in setting support levels. By contrast, section 505(a) utilizes guidelines as a starting point in the support award determination, and, consistent with section 505(a), the trial court also looked to other factors in determining whether to apply the guidelines.

In enacting section 505(a), the legislature had made a determination, subject to considerable flexibility in individual cases, as to the proper disposition of child support cases. This involves no procedural defects.

### SUBSTANTIVE DUE PROCESS

Domestic relations is "an area that has long been regarded as a virtually exclusive province of the States." (*Sosna v. Iowa* (1975), 419

U.S. 393, 404, 42 L. Ed. 2d 532, 543, 95 S. Ct. 553, 559-60.) As early as *Pennoyer v. Neff* (1877), 95 U.S. 714, 734-35, 24 L. Ed. 565, 573, the Supreme Court noted that a State "has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved."

■ Respondent contends that a noncustodial parent has a fundamental right not to support one's children, beyond the provision of basic necessities, regardless of the parent's financial ability. Such a right would destroy the historic standards by which Illinois courts have determined the appropriate amount of child support by taking into account the incomes of the parents. Respondent cites no authority to support his argument and we are not aware of any.

Respondent also contends that to the extent that noncustodial parents are required to pay more than the minimum cost of raising a child, House Bill 3068 infringes on the parent's right to remarry and have additional children, thereby violating substantive due process protected by the Federal Constitution. This argument, if accepted, would impede the traditional authority of both the State legislature and State courts to regulate the determination and enforcement of child support orders beyond basic necessities. His argument is supported neither by logic nor by authority. The extent to which section 505(a) regulates the marriage relationship is well within the legislature's traditional power and responsibility in this area.

## EQUAL PROTECTION

Respondent contends that the statute violates the equal protection clause of the Federal and State constitutions. The basis of his argument is that although the statute is neutral on its face, it unfairly discriminates against men in favor of women in its application because statistics indicate that in 88% of divorces, men are the noncustodial parents.

■ Respondent again relies on the assumption that the statutory guidelines are mandatory. Although the statute obviously distinguishes between custodial and noncustodial parents, the statute treats all divorced parents alike, and thus does not deny noncustodial parents equal protection. See, *e.g., Sanders v. City of Springfield* (1985), 130 Ill. App. 3d 490, 497, 474 N.E.2d 438.

Even if the statute can be construed to treat noncustodial parents differently, such classification is proper. The equal protection clause does not deny a State the power to differentiate between persons similarly situated if there is a rational basis for doing so. (*Jenkins v. Wu*

(1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162.) As noted above, the statute includes a percentage of noncustodial parents' income in order to standardize and increase child support in light of comprehensive studies showing inadequate awards. See, *e.g.*, Williams, *Child Support and the Cost of Raising Children: Using Formulas to Get Adequate Awards*, Institute for Court Management of the National Center for State Courts (May 3, 1985).

Sufficient differences exist between custodial and noncustodial parents to warrant the conclusion that they comprise different classes. The major distinction here is that a custodial parent has the primary and general responsibility to care for the child.

Noncustodial parents are assessed a specific amount for child support payments, while custodial parents are not so assessed. But custodial and noncustodial parents are not "similarly situated" since, after divorce, the custodial parent's responsibility for the child's support as well as care is general and plenary, while the noncustodial parent's responsibility is usually limited to the requirements of the support order. While both parents are responsible for the child's support, it is not the child support schedules themselves but the very fact that the noncustodial parent must discharge his or her responsibility by making cash payments to the custodial parent which initially distinguishes them. The schedules themselves do not create a legislative "classification"; they merely structure, subject to court adjustment, the noncustodial parent's contribution in an effort to shift some of the burden of care and support from the custodial parent. The legislature could rationally have concluded that the percentages of the noncustodial parent's net income included in the guidelines constituted a fair point of departure and fully rebuttable presumption in attempting to equalize, or at least make more equitable, the share of the noncustodial parent's contribution. Illinois constitutional law requires no more.

That custodial parents are differently situated than noncustodial parents appears from the one case which the respondent cites presumably in support of his Illinois equal protection claim. In *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95, the appellate court reversed an order which completely denied the custodial parent (the father) any child support payments from the noncustodial parent (the mother), even though the income of the noncustodial parent was higher than that of the custodial parent. The trial court had apparently relied on the fact that the custodial parent made an adequate income. (26 Ill. App. 3d 947, 949, 326 N.E.2d 95.) Of course, in *Hursh*, the custodial parent had not been "assessed" any child sup-

port "obligation" either, but the court recognized the obvious fact that he was significantly contributing to the needs of the child, while the noncustodial parent was contributing nothing, despite a significant income. Under those circumstances, the court found a violation of the custodial parent's right to equal protection of the laws. (26 Ill. App. 3d 947, 951, 326 N.E.2d 95.) In this case, on the other hand, the court, after considering the contributions by both parents and their relative abilities to contribute to the child's support, has ordered the noncustodial parent to increase the amount he is paying for support of the child. This is, of course, consistent with section 505(a) which has required and continues to require both parents to contribute to the child's support.

In amending section 505(a), the legislature could rationally have "assumed" that the custodial parent is already contributing to the support of the child in an amount equivalent to the percentage schedules, and constructed the schedules, subject to modification in any individual case, on that assumption. See *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382.) The statute does not deprive the respondent of equal protection of law under the Federal and Illinois constitutions.

## REMEDIES

Respondent's final constitutional claim consists of a bare allegation that section 505(a) violates the constitutional provision mandating a remedy for every injury. He cites no cases to support his contention.

Most claims brought under article II, section 19, of the 1970 Illinois Constitution and its predecessor provisions have complained of a lack of access to the courts. These claims have been unsuccessful, the courts' holding that this constitutional provision is more an "expression of philosophy" than a constitutional mandate. See *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659 (upholding governmental tort immunity law).

What respondent appears to be claiming is that the guidelines deprive him of due process of law. We have already disposed of that issue.

## II

Respondent next contends that the trial court abused its discretion in increasing child support from $275 per month to $400 per month because petitioner failed to introduce any evidence of the increased needs for the minor child. We disagree.

The modification of child support lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229.

The evidence revealed that the current child support expenditures increased by $330 per month since the entry of the 1979 support order. Tuition, unreimbursed medical costs, and camp fees accounted for the increase.

In 1979, respondent paid $275 per month for child support. If one-half of the $330 in increased expenses was charged to the respondent, he would pay $440 per month. He has no reasonable basis to complain about the $400 per month order because the custodial parent will also contribute toward the increased child expenses. This computation does not take into account evidence presented regarding petitioner's increased household expenses since 1979 and does not charge any portion to the child. The order of the trial court does not constitute an abuse of discretion.

The record also reveals that in 1979, the respondent's net income was approximately $1,250 per month. In 1984, it increased to approximately $2,000 per month. This increase in income lends further support to the reasonableness of the support order and the respondent's ability to comply.

### III

Respondent contends that the court misconstrued the statute and mechanically applied the guidelines. This erroneous argument has been considered and disposed of in dealing with some of his constitutional allegations.

The trial court conducted a full hearing concerning the income, assets, expenditures, and needs of the parties and the child. Respondent was not denied the opportunity to present any evidence that would justify a lower child-support award. The court expressly found that the child had increased needs and that the respondent's income increased sufficiently to share in those additional expenses. The trial court's application of the statute was correct.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.