(No. 61954.—

*In re* SUPPORT OF KEITH PEARSON (Pauline Pearson, Appellee; Robert E. Pearson, Appellant).

*Opinion filed March 19, 1986.*

Richard Gigante, P.C., of Chicago (Paul R. Jenen, of Wheeling, of counsel), for appellant.

Joel S. Ostrow, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Pauline Pearson, instituted the present action asking that defendant, her former husband, Robert Pearson, contribute toward the educational expenses of their son, Keith. The circuit court of Cook County ordered that defendant pay $100 per month for two years toward Keith's post–high-school education. Plaintiff appealed, and the appellate court, in a Rule 23 order (87 Ill. 2d R. 23), modified the judgment to require defendant to pay $5,150 per year for two years (132 Ill. App. 3d 1159). This court granted defendant's petition for leave to appeal.

The sole issue presented is whether the trial court's award of $100 per month was against the manifest weight of the evidence.

The parties' marriage was dissolved on March 18, 1983. The dissolution decree provided for the education of the couple's youngest child by stating:

> "With regard to KEITH PEARSON, now emancipated, at such time as he has applied for and been accepted to a college, university, or trade school, either party may file an appropriate petition seeking financial contribution from the other in connection with said college education expense pursuant to Section 513 [of the Illinois Marriage and Dissolution of Marriage Act.]"

The decree thus incorporated the standards set forth in section 513 of the Illinois Marriage and Dissolution of Marriage Act, which reads in relevant part:

"The Court *** may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require ***. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1983, ch. 40, par. 513.

On July 5, 1983, approximately 3½ months after the dissolution decree was entered, plaintiff filed a petition seeking contributions toward Keith's education and reimbursement for amounts she had already expended. At the hearing held pursuant to this petition the evidence showed that Keith had been accepted into, and was attending, a two-year program in automotive and diesel technology at Technical Careers Institute in West Haven, Connecticut. The annual tuition at Technical Careers Institute (TCI) was $5,300. Keith had rented an apartment in Connecticut at a monthly rent of $300, for a total of $3,600 per year. Plaintiff estimated Keith's food expenses at $1,400 per year, and estimated other expenses, including clothing, supplies, and transportation, at $3,700 per year. Her total estimate was approximately $14,000 per year or $28,000 for the two-year period of study.

Defendant offered into evidence the course catalogue from Triton College, a junior college in Cook County. Although the program at Triton was not identical to that at TCI, tuition for a similar program in automotive and diesel maintenance would cost $4,026 over four semesters. The parties disagreed as to the relative merits of

the two programs, plaintiff claiming that TCI had a better reputation than Triton, while defendant claimed that Triton's program was "more comprehensive."

Defendant also offered evidence of the post–high-school educational expenses the Pearsons had expended on their other children prior to the dissolution. One child, Amy, had attended a three-year program at the Massachusetts General Hospital School of Nursing. According to defendant the highest annual cost expended on Amy's education was $1,795 in 1975. Another child, Kim, attended Harper Junior College and Western Illinois University, with expenses ranging from a low of $450 for a year at Harper to a high of $2,404 for a year at Western. A third child, Todd, had taken only a few classes at Harper in 1978, at a cost of $125, and had then entered the Navy. The Pearson's greatest outlay in a single year was $3,602 in 1978 when both Amy and Kim were attending school. The most spent on one child was a total of $7,421 spent on Kim's education over a five-year period from 1974 to 1978.

Evidence was also offered to establish defendant's financial resources. Under the March 18, 1983, dissolution decree the property distribution required defendant to pay plaintiff $20,000 immediately and an additional $28,863 in seven annual installments of $4,123.29. In addition, defendant was required to pay plaintiff $5,250 immediately as her share of defendant's pension plans with the Navy and with Kemper Insurance Company. Payment of the $5,250 enabled defendant to retain full rights to the pensions, although the record is not clear as to the present value of those rights. Defendant also received one-half of the couple's jointly owned stock worth approximately $326, and received any sums left in his Kemper profit-sharing plan after payment of the sums due to plaintiff. At the time of the dissolution the profit-sharing plan had a cash value of $62,000. All other

assets, including the marital residence, furnishings, and automobile, went to plaintiff. The marital residence alone had an equity value of $77,000.

Defendant was also required to pay plaintiff $1,000 per month in maintenance, and was required to maintain insurance on his life, with plaintiff as beneficiary, until the property settlement had been paid in full. Finally, he was required to pay his own attorney fees of $8,881.50, as well as $2,835.70, representing one-half of plaintiff's attorney fees.

According to defendant's testimony, in late 1983 he had liquidated the profit-sharing plan so that he could pay attorney fees and the $25,250 immediately due plaintiff. The liquidation of the plan caused him to incur a tax liability of $23,794. After the payments and taxes due were deducted from the value of the profit-sharing plan the remainder was less than $300.

At the time of the hearing, in January 1984, defendant testified that his assets consisted of $25,524 in a Kemper Money Market Account, $159.67 in a checking account at the Bank of Chicago, $26.89 in a checking account at the Great Lakes Credit Union, $805.10 in a savings account at the Great Lakes Credit Union, and any equity value there might have been in an automobile he had recently purchased for $9,250, with a $6,800 outstanding balance on the auto loan. As of the hearing he had not yet paid his 1983 tax liability, which included the $23,794 liability incurred due to the liquidation of his profit-sharing plan. Neither party offered evidence as to the present value of defendant's pensions, although in his brief defendant claims that he cannot receive any benefit from either of his pensions for another 5 to 10 years.

Defendant also testified that his gross annual income was $41,000. His net income after deductions was approximately $28,000. Of this $28,000, $12,000 went to plaintiff as maintenance payments and an additional $4,123.29

went to pay off the annual installment on the property settlement. Defendant testified that the remaining income was not quite enough to pay his monthly personal expenses, which totalled slightly more than $1,000.

The "educational expenses" clause in the property distribution here in question is clearly not an express agreement obligating either party to pay specific expenses. The clause does no more than to reserve until a later date the question of educational expenses under section 513. This section does not mandate that divorced parents must in all cases provide their children with funds for post–high-school education. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 580.) The statute states that the court "may" order a party to provide resources for a child's education (Ill. Rev. Stat. 1983, ch. 40, par. 513), and we think this language makes it plain that the legislature intended that the matter be addressed to the trial court's discretion. See *In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 1006.

Section 513 specifically requires the court to consider "[t]he standard of living the child would have enjoyed had the marriage not been dissolved." (Ill. Rev. Stat. 1983, ch. 40, par. 513(b).) Thus the trial court in the present case properly considered the most probative evidence of this factor, namely the parties' educational expenditures on their other children prior to the dissolution. (*Cf. In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 307.) While the effects of inflation on educational costs were not definitively established, the evidence tended to show that the amounts sought by plaintiff for Keith's education were greater than the educational expenditures for any of the parties' older children.

The trial court also properly considered the availability of a program similar to TCI at Triton College. While in some instances it may be proper for the court to provide for a child's attendance at a private school, the

child's access to a less expensive public institution is a factor to be considered. (See *In re Marriage of Cooper* (1981), 102 Ill. App. 3d 872, 876; *Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 947.) Where, as here, there was little evidence offered as to the relative merits of the TCI and Triton programs, and where there was no reason to believe that the Triton program was inadequate, the trial court did not act improperly in emphasizing the huge difference between the cost of attending TCI and the cost of attending Triton.

The final factor involved in the case at bar is the defendant's ability to pay for his son's education. If the trial court chose to believe defendant it could have concluded that defendant's available assets at the time of the hearing totalled approximately $26,500, offset by a tax liability of around $23,800, for a net of approximately $2,700. Defendant's income, according to his uncontroverted testimony, went entirely toward maintenance payments, his property-distribution obligations, and his own living expenses.

The court should not order a party to pay more for educational expenses than he or she can afford. (*Booth v. Booth* (1970), 122 Ill. App. 2d 1, 7.) A party's ability to pay must be evaluated with regard to the party's resources at the time of the hearing. (*Elizer v. Elizer* (1976), 36 Ill. App. 3d 552, 555.) Given defendant's limited financial resources, the availability of a less expensive school with a similar program, and the fact that defendant's other children received less money toward their educations than was here requested, we cannot say that the trial court's judgment was against the manifest weight of the evidence.

Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*