BONNIE KAY WACHTEL, BY AND THROUGH HER MOTHER AND NEXT FRIEND, BRENDA WACHTEL, APPELLANT, V. ROBERT A. BEER, M.D., ET AL., APPELLEES.
427 N.W.2d 56

Filed August 5, 1988.   No. 86-1026.

Stephen L. Gerdes and Peter J. Hoagland, and Vard Johnson, of Broom & Johnson, for appellant.

James A. Snowden, of Knudsen, Berkheimer, Richardson & Endacott, for appellees Beer et al.

Robert T. Grimit, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Scheer.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

SHANAHAN, J.

On October 25, 1985, Brenda Wachtel, mother and next friend of Bonnie Kay Wachtel, filed a negligence action against Robert A. Beer and Dean R. Thomson, physicians and partners in the Nebraska City Family Medical Clinic, and against St. Mary's Hospital of Nebraska City and Kathryn Scheer, a nurse-anesthetist. On account of the defendants' alleged negligence at the time of Bonnie Kay's birth, Brenda Wachtel sought damages for permanent injury to Bonnie Kay and medical expenses, past and future, which were assigned to Bonnie Kay for inclusion in the litigation.

Brenda Wachtel received prenatal care from Drs. Beer and Thomson for her pregnancy with Bonnie Kay. In labor late during her pregnancy, Brenda entered St. Mary's Hospital, where, in the early morning of October 30, 1983, there were

signs of fetal distress in Bonnie Kay, who was delivered by cesarean section around 3:30 p.m. on October 30. Attending Bonnie Kay's birth were Drs. Beer and Thomson and nurse-anesthetist Scheer. Bonnie Kay was born with brain damage and an eyesight disorder, which are permanent. Alleged as negligence are several items, including the physicians' misuse of the drug Nubain administered to Brenda, whose baby was in fetal distress; failure to promptly perform a cesarean section; failure to refer Brenda to an obstetrician to handle problems with a high-risk baby; failure to properly resuscitate Bonnie Kay after her birth; and failure to properly monitor Bonnie Kay's condition. Denying negligence in their answers, Drs. Beer and Thomson answered on November 27, 1985, and Scheer answered on December 4.

On August 16, 1986, Drs. Beer and Thomson moved for summary judgment. Scheer moved for summary judgment on September 9. At the hearing on the defendants' motions, held on October 3, each defendant introduced an affidavit, which very generally alleged that management of Brenda Wachtel's pregnancy and delivery of Bonnie Kay conformed with accepted standards and denied any negligence regarding Brenda Wachtel or Bonnie Kay. In addition to their affidavits, the defendants introduced "Plaintiff's Answers to Interrogatories," served on the defendants in December 1985, which stated that the plaintiff had not made a final determination concerning any expert witness who would testify for the plaintiff at trial.

At the October 3 hearing, plaintiff attempted to introduce exhibit 5, an affidavit signed by plaintiff's lawyer on October 3, which recited that the lawyer, at an unspecified time, had contacted a board-certified obstetrician and gynecologist, whom the affidavit did not identify but who was in Washington, D.C., and who, after reviewing records for Bonnie Kay, had concluded that "there is evidence that the defendants in the above-captioned case did not meet the appropriate standard of care for Nebraska City, Nebraska." The affidavit further stated:

Affiant has recently retained Dr. Roger K. Freeman to testify on behalf of plaintiff. Dr. Freeman is Medical

Director of the Women's Hospital, Memorial Hospital Medical Center of Long Beach, California. Dr. Freeman is a Professor in the Department of Obstetrics and Gynecology at the University of California at Irvine. Dr. Freeman has not yet had time to prepare a formal report.

Exhibit 5 did not disclose when plaintiff's lawyer had retained Dr. Freeman and did not supply an anticipated date for Dr. Freeman's report. Objecting to exhibit 5, defendants asserted that the lawyer's affidavit did not contain a medically expressed opinion or facts indicating that the defendants were negligent. In response, plaintiff's lawyer informed the court:

> We've not taken depositions on the case and so it's even a little difficult for the expert that I have retained to come in and render an opinion until after I have deposed the defendant doctors [because] you can't make a determination just on the bare records as to what happened in a delivery room. And so I think the affidavit becomes very relevant because it indicates to the Court that the plaintiff now does have an expert, and an expert who, when the appropriate discovery has been done, will render an opinion and will be subject to being deposed by defense counsel as to that opinion.

To the court's inquiry about a particular physician's affidavit for the plaintiff, the plaintiff's lawyer remarked:

> But the problem that I have is that I have been in the process of trying to get the expert. I just got the expert. He is not in a position yet to render an opinion. I'm on my way down to Kansas City to meet with another expert to review over the records. We've talked about it on the phone, but he hasn't had a chance to see the monitor strip so he can't give you an opinion. . . .
>
> And I would also indicate to the Court that prior to filing this case, I had discussed the matter with several doctors, obstetricians and gynecologists in the area, and they have given me the opinion that there are serious problems with the standard of care. But because of the obvious problem of doctors wanting to testify against a fellow doctor, I've honored their request and kept their names confidential.

When the court sustained the defendants' objection to exhibit 5, plaintiff's lawyer requested additional time to obtain affidavits from plaintiff's medical experts to counteract the defendants' affidavits offered for the summary judgment. After denying plaintiff's oral request for a continuance to obtain an additional affidavit from a physician, the court granted the attorneys time to file briefs regarding the issues raised at the October 3 hearing and took defendants' motions for summary judgment under advisement.

On October 10, 1986, plaintiff filed a "Motion to Conduct Second Hearing on Motion for Summary Judgment or to Receive Additional Evidence," which was heard on November 7, 1986. At that hearing, plaintiff offered the affidavit by plaintiff's lawyer, exhibit 5, which had been excluded from evidence at the October 3 hearing on defendants' motions for summary judgment. Regarding exhibit 5, counsel for Drs. Beer and Thomson stated to the court: "[I]f that affidavit is being offered to show some excuse for not offering evidence at the time of the first hearing, I think it ought to be received." Scheer's counsel agreed with that statement concerning exhibit 5. Referring to defendants' stated position relative to introduction of exhibit 5, the court responded: "I think so too. I think it ought to be received for that purpose. That's in conjunction with 1335."

Neb. Rev. Stat. § 25-1335 (Reissue 1985) states:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

At the November 7 hearing, plaintiff offered other exhibits, namely, exhibit 7, another affidavit by plaintiff's lawyer; exhibit 8, an affidavit by John Calkins, M.D.; and exhibits 9, 10, and 11, plaintiff's supplemental answers to interrogatories, which stated that plaintiff would call Dr. Calkins to testify at trial concerning the matters mentioned in his affidavit, exhibit. 8. On defendants' objection, the court excluded exhibits 8

through 11.

In exhibit 7, the lawyer's affidavit dated October 10, 1986, plaintiff's counsel stated that he had conferred with two obstetricians and gynecologists in the Omaha area, who demanded that they remain unidentified but who expressed opinions that "each defendant departed from the applicable standard of care for the delivery of babies" in Nebraska City. The affidavit then described other events and the problems plaintiff's lawyer was encountering in the dissolution of his law firm, such as handling the firm's files and complying with various court orders regarding the partnership dissolution. In June 1986, plaintiff's lawyer contacted Dr. Freeman, apparently the same physician mentioned in exhibit 5, and a Dr. Thomas J. Garite in Long Beach, California. The California physicians indicated they would review Bonnie Kay's records and would recontact plaintiff's lawyer. On August 15, 1986, the trial judge before whom plaintiff's case was pending, without objection, passed over plaintiff's case for trial in the fall jury term of 1986. While officiating at the U.S. Open Tennis Championships in New York from August 20 to September 6, 1986, plaintiff's lawyer discussed plaintiff's case with a Washington, D.C., obstetrician and gynecologist (presumably the same physician mentioned in the lawyer's previous affidavit, exhibit 5), who requested Bonnie Kay's records, which counsel transmitted. Although counsel repeatedly attempted to reach the Washington, D.C., physician by telephone, counsel's calls went unanswered. In late September 1986, Dr. Freeman, whom plaintiff's lawyer had contacted in June, told plaintiff's lawyer that he would testify but that the doctor's formal report could not be prepared for several months. At that point, plaintiff's lawyer contacted Dr. John Calkins, who said he would meet with plaintiff's counsel in Kansas City, Kansas, on October 3, 1986, when Bonnie Kay's records would be reviewed. Immediately after the October 3 hearing on defendants' motions for summary judgment, plaintiff's lawyer personally met Dr. Calkins in Kansas City, where the doctor, after reviewing Bonnie Kay's records, agreed to testify for the plaintiff.

Exhibit 8 was the affidavit of Dr. Calkins and contained an

extensive and impressive "Faculty Curriculum Vitae" of Dr. Calkins as an associate professor of obstetrics and gynecology at the University of Kansas Medical Center. In his affidavit, dated October 8, 1986, Dr. Calkins stated:

> I am familiar with the standard of care for the treatment of pregnant women and the delivery of babies in communities in Kansas and Nebraska such as Nebraska City, Nebraska, during the year 1983.
>
> . . . I have reviewed the medical records concerning the prenatal care and treatment of Brenda Wachtel [and] have reviewed also the medical records, including the fetal monitor strips, concerning the delivery of Bonnie Kay Wachtel in October, 1983.
>
> . . . It is my opinion that said medical records include evidence that each of the defendants . . . deviated from the standard of care for the delivery of babies in communities such as Nebraska City, Nebraska.

Dr. Calkins then expressed the reasons for his opinion that each of the defendants had "deviated from the standard of care" for Bonnie Kay's birth, namely, an inappropriate lapse of time between the decision to perform an emergency cesarean section and the time at which the surgery was actually undertaken; fetal monitor strips showing signs of severe fetal distress 45 minutes after the decision to perform the cesarean section; and the medical probability that Bonnie Kay had suffered brain damage as the result of fetal distress, because the cesarean section had been delayed. Dr. Calkins concluded that he would be able to make more specific statements concerning the nature of each defendant's "departure from the standard of care," after the defendants' depositions had been reviewed by the doctor.

Therefore, at the November 7 hearing, exhibits 5 and 7 (affidavits from plaintiff's lawyer) were received into evidence, and exhibits 8 through 11 were excluded as the result of defendants' objections.

On November 10, 1986, the court granted summary judgment to Beer, Thomson, and Scheer.

Brenda Wachtel claims that the district court erred in not granting a continuance to permit affidavits to be obtained,

depositions to be taken, or discovery to be completed, all as provided by § 25-1335 regarding a proceeding for summary judgment.

Beer, Thomson, and Scheer contend that the evidence at the October 3, 1986, hearing entitled them to summary judgment because the plaintiff did not make a counter-showing that a genuine issue of material fact existed for disposition by trial on the question of defendants' negligence. Therefore, defendants argue, they were entitled to judgment as a matter of law. To support their contention, the defendants refer to our decisions which contain the proposition that, when a party moving for summary judgment has made a prima facie showing that the movant would be entitled to judgment if the evidence is uncontroverted, summary judgment should be granted to the movant unless the opposing party offers evidence showing that there is a genuine issue concerning a material fact. See, *Marshall v. Radiology Assoc.*, 225 Neb. 75, 402 N.W.2d 855 (1987); *Reifschneider v. Nebraska Methodist Hosp.*, 222 Neb. 782, 387 N.W.2d 486 (1986); *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982), *appeal after remand* 216 Neb. 575, 344 N.W.2d 649 (1984). Defendants argue that Wachtel did not present evidence showing a genuine issue of material fact concerning defendants' negligence, because the affidavits by Wachtel's lawyer did not contain appropriate evidence on the question of negligence. See *Marshall v. Radiology Assoc., supra* (affidavit by plaintiff's lawyer, stating contents of medical records and indicating the expert witnesses would testify for plaintiff at trial, was not evidence to establish a question of fact concerning a defendant's malpractice).

However, we bear in mind that, as a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed. See, *Draemel v. Ruffenacht, Bromagen & Hertz, Inc.*, 223 Neb. 645, 392 N.W.2d 759 (1986) (summary judgment should not be used to deprive a litigant of a formal trial if there is a genuine issue of fact); *Hanzlik v. Paustian, supra*.

Section 25-1335 is a verbatim counterpart to Fed. R. Civ. P.

56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

According to 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2740 at 529-30, 532 (2d ed. 1983):

> Rule 56(f) protects a party opposing a summary judgment motion who for valid reasons cannot by affidavit . . . present "facts essential to justify his opposition" to the motion. Under the rule a party who seeks the protection of subdivision (f) must state by affidavit the reasons why he is unable to present the necessary opposing material and the court then may (1) refuse to grant summary judgment, (2) order a continuance to permit affidavits to be taken or discovery to be had, or (3) "make such other order as is just."
>
> An important aspect of a Rule 56(f) affidavit is that it need not contain evidentiary facts going to the merits of the case; rather, it is merely a sworn statement explaining why these facts cannot yet be presented. . . . As [former] Massachusetts Supreme Court Justice, Benjamin Kaplan has stated: "Under rule 56(4) the adversary need not even present the proof creating the minimal doubt on the issue of fact which entitles him to a full trial; it is enough if he shows the circumstances which hamstring him in presenting that proof by affidavit in opposition to the motion." [Kaplan, *Amendments of the Federal Rules of Civil Procedure*, 77 Harv. L. Rev. 801, 826 (1964).] Thus Rule 56(f) allows a party who has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof. . . .
>
> . . . .
>
> The purpose of [Rule 56(f)] is to provide an additional safeguard against an improvident or premature grant of

summary judgment and the rule generally has been applied to achieve that objective. Consistent with this purpose, courts have stated that technical rulings have no place under the subdivision and that it should be applied with a spirit of liberality.

See, also, *Buchanan v. Stanships, Inc.*, 744 F.2d 1070 (5th Cir. 1984).

As observed in 6 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.24 at 56-1421, 56-1429, and 56-1430 (2d ed. 1987):

Rule 56(f) . . . does not deal with the evidentiary affidavit. It authorizes the *party opposing* summary judgment to set forth reasons why he is presently unable to present "by affidavit facts," *i.e.*, evidentiary affidavits, "essential to justify his opposition"; and it authorizes the court, where the stated reasons are adequate, to take action appropriate to the circumstances of the case.

. . . .

If the trial court determines that the reasons stated in the affidavit are adequate, it has a broad discretion to determine the further course of the litigation. It may deny the motion for summary judgment and order the case to stand for trial; deny the motion upon condition that the opposing party be ready to proceed to trial when the case is reached in its regular order; deny the motion without prejudice to its renewal after the answer has been served, or after the opposing party has had sufficient time to obtain opposing affidavits, take depositions or make use of the discovery procedures; order a continuance to allow the opposing party time to obtain affidavits, take depositions, or otherwise make effective use of the discovery procedures available under the Rules; or make any other order that is just in the particular situation.

What has been stated concerning Rule 56(f) in 10A C. Wright, A. Miller & M. Kane, *supra*, and 6 J. Moore & J. Wicker, *supra*, applies equally to § 25-1335. Therefore, we hold as follows: The purpose of § 25-1335 is to provide an additional safeguard against an improvident or premature grant of summary judgment. A § 25-1335 affidavit need not contain evidence going to merits of the case; rather, a § 25-1335

affidavit must contain a reasonable excuse or good cause, explaining why a party is presently unable to offer evidence essential to justify opposition to the motion for summary judgment. Section 25-1335 should be applied with the spirit of liberality.

Regarding application of § 25-1335 and its counterpart, Rule 56(f), a party's access to witnesses or material is an important consideration for the court. See *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260 (10th Cir. 1984) (party filing the affidavit under Rule 56(f) must show how additional time will enable the party to rebut a summary judgment movant's allegations that no genuine issue of material fact exists for disposition by trial).

Refusal to apply § 25-1335 is disfavored when the party opposing summary judgment makes a timely application by an affidavit which specifically identifies the relevant information and indicates some basis for the conclusion that the sought information actually exists. See *VISA Intern. Service v. Bankcard Holders*, 784 F.2d 1472 (9th Cir. 1986).

In civil proceedings other than a summary judgment, we have repeatedly stated that a motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. See, *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987); *First Nat. Bank v. Schroeder*, 222 Neb. 330, 383 N.W.2d 755 (1986).

A continuance and other judicial action authorized by § 25-1335 are within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.

Exhibit 5, the October 3 affidavit by Wachtel's lawyer, stated that a physician had informed counsel that there is evidence that each of the defendants was negligent concerning Bonnie Kay's birth and that another expert, Dr. Freeman, a California physician, had not had sufficient time to prepare a formal report on the defendants' negligence. We construe the October 3 affidavit to be a statement that the plaintiff, at the time of the initial hearing on defendants' motions for summary judgment, was then unable to offer evidence essential to justify opposition

to the defendants' motions and that appropriate evidence would be forthcoming and available to resist the summary judgment motions. Beyond question, when exhibit 5 was excluded at the October 3 hearing, Wachtel's lawyer requested a continuance to obtain a counteraffidavit responsive to defendants' affidavits offered for the summary judgment. Although exhibit 5 was excluded at the October 3 hearing, the court took the defendants' summary judgment motions under advisement and resumed the hearing on November 7, when exhibit 5 was received into evidence without objection. In fact, lawyers for the defendants acknowledged that exhibit 5 was admissible "to show some excuse for [plaintiff's] not offering evidence at the time of the first hearing" on October 3. With defense counsel's approbation, reception of exhibit 5 into evidence at the November 7 hearing effectively characterized and constituted that hearing as a continuation of the hearing commenced on October 3 for summary judgment. In receiving exhibit 5 at the November 7 hearing, the court unequivocally stated that the lawyer's affidavit was received for the purpose of § 25-1335, that is, an affidavit to show that the plaintiff was presently unable to offer evidence essential to justify opposition to the defendants' motions for summary judgment. Exhibit 7, offered at the November 7, or second, hearing, included not only those matters alleged in exhibit 5 but also additional information and a more detailed description of what transpired and did not transpire regarding plaintiff's efforts to obtain necessary data from physicians. Therefore, we view exhibit 7, the second affidavit by Wachtel's lawyer, as an amplification or supplement to exhibit 5, which was also received as evidence at the November 7 hearing. Exhibit 7 described in detail the difficulties which Wachtel's lawyer experienced in obtaining information from physicians. Although exhibit 7 recounts some of the problems stemming from dissolution of the law firm of Wachtel's lawyer and counsel's occupation at a tennis tournament in Queens, New York, the real and obvious obstacle, by the very nature of the case—medical malpractice—was access to and availability of a qualified physician who was ready, willing, and able, in terms of time and temperament, to be a witness or affiant in Bonnie Kay's case. In

practicality, the complexities of an action for malpractice and the problems of gaining information and enlisting a reliable expert witness as well as formulating and preparing a malpractice case are myriad and usually major, a situation almost a matter of judicial notice.

Exhibit 8, Dr. Calkins' affidavit, offered but excluded at the November 7 hearing, indicates some of the complexity in the medical questions to be answered for an adequate presentation of an extremely important matter for a permanently brain-damaged child. According to Dr. Calkins, whose affidavit (exhibit 8) contained relevant information and should have been received into evidence, answers to those serious questions necessitate the defendants' depositions. Undoubtedly, defendants' depositions, without appropriate medical information as background and preparation by plaintiff's counsel, would likely be a pointless exercise. Appreciable time was consumed during the California physician's deliberation whether to testify for the plaintiff. The affidavits from Wachtel's lawyer and Dr. Calkins, when read together, show a reasonable excuse and good cause, explaining why Wachtel was then unable to offer evidence essential to justify opposition to the defendants' summary judgment motions. We have considered Dr. Calkins' affidavit only in relation to the application of § 25-1335. We have not decided, because we need not decide, whether Dr. Calkins' affidavit contains evidence going to the merits of Wachtel's case inasmuch as Dr. Calkins has indicated that his review of the defendants' depositions will enable him to be more specific concerning the nature of the defendants' negligence. Moreover, the district court excluded Dr. Calkins' affidavit and, therefore, apparently did not consider that affidavit in awarding summary judgment to the defendants. Whether Dr. Calkins' affidavit results in a genuine issue of material fact is, as yet, undetermined and may eventually become a question for the district court.

We note that there had not been a pretrial conference or other order in this case setting a time limit which had expired for obtaining the defendants' depositions. When the defendants' summary judgment motions were filed, Wachtel's case was

within the 18-month deadline for trial in a civil action. See Neb. Ct. R. on Case Progression Standards (rev. 1986).

A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through a judicial system. *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986); *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

Denial of a continuance to Wachtel constituted an abuse of discretion by the district court because the improvident and premature summary judgments deprived Wachtel of her substantial right to present evidence opposing the defendants' evidence in support of their summary judgment motions, thereby denying Wachtel her day in court. Consequently, the judgment of the district court is reversed, and this matter is remanded to the district court for further proceedings.

This appellate disposition is not intended to prejudice defendants' right to renew their summary judgment motions after Wachtel has had the opportunity to participate in discovery or obtain counteraffidavits responsive to defendants' summary judgment motions and supporting evidence. Further, we do not intimate or otherwise indicate any view concerning the merits of defendants' motions for summary judgment and do not imply that there is or is not a genuine issue of material fact regarding Wachtel's negligence action.

We are aware that Bonnie Kay Wachtel's infancy and Neb. Rev. Stat. § 25-213 (Reissue 1985) (actions by infants; tolling of limitation) tolled the 2-year statute of limitations for medical malpractice (Neb. Rev. Stat. § 25-222 (Reissue 1985); see *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984)), which would have obviated the necessity to file a suit without specific medical information immediately available for judicial proceedings and would have eliminated exposure to summary judgment as the result of an inability to present countervailing evidence. However, because the claim of Bonnie Kay's parents for medical expenses was assigned to Bonnie Kay and thereby made a cause of action in the suit, suspension of the

statute of limitations, afforded by § 25-213, would not have inured to the parents' benefit to preserve actionability of the medical expenses. See *Macku v. Drackett Products Co., supra.* Consequently, under the circumstances, resolution of the presented question became necessary.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.