Robert Mark MINTLE,
Appellant (Plaintiff),

v.

Teresa Rea MINTLE, Appellee
(Defendant).

No. 88–90.

Supreme Court of Wyoming.

Nov. 8, 1988.

Rehearing Denied Dec. 1, 1988.

Robert T. Moxley of Whitehead, Gage & Davidson, P.C., Cheyenne, for appellant.

William W. Harden of Harden, Harden & Peek, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Robert Mark Mintle (husband) appeals a divorce decree entered on January 6, 1987. In the decree the trial court granted custody of the two Mintle daughters to appellee Teresa Rea Mintle (wife) and ordered husband to pay $350 child support per month and wife's attorney's fees. Husband raises essentially four issues all asserting an abuse of trial court discretion. Considering his arguments, we review two evidentiary rulings, the grant of custody to wife, the amount of child support ordered, and the award of attorney's fees to wife.

We affirm.

The parties were married in Casper, Wyoming, on September 2, 1977. The same year, on June 27, they had their first daughter, Brenda Lee Mintle. Their second daughter, Christine Lynn Mintle, was born on September 10, 1978. By 1987, the parties were at odds. Their bad relations culminated on July 9, 1987, when husband filed a complaint seeking divorce and custody of the two children.

The case was tried as a bench trial on December 14, 1987. Husband called wife as an adverse witness. Wife testified about her care and discipline of the children and about various events that took place during the pendency of the divorce action. Much of her testimony involved the parties' disagreements over husband's visitation of the children during that time.

Husband also testified about these events, refreshing his memory from his diary. This diary was not offered into evidence at trial. Concerning his income, husband testified that his present job paid $240 per week, but that he did not always get to work a full week. He estimated the job would last through 1988. Husband testified that he expected independent income from other work, and he thought he could sell roughly thirty cords of firewood during the winter for $75 per cord. During the summer he contracted various landscaping jobs. Husband testified he had turned down offers of employment received since his last energy-related job in 1985. When asked about his debts, he listed day-to-day living expenses, a house payment, and a debt of $1,300. He also admitted to having withdrawn approximately $5,000 from each of two family bank accounts established for the children. These withdrawals took place before husband filed his complaint for divorce, and wife was never given access to those funds.

The trial court also heard *in camera* testimony from the two Mintle daughters. Both children stated a preference for living with their mother.

Toward the conclusion of husband's testimony, the trial court suggested that both parties submit a written summary of their additional evidence and arguments for a final determination. This was done in lieu of an additional hearing, and *both* parties agreed to this arrangement. The parties submitted their summaries, arguments, and supporting materials over the following two weeks. In her submission wife included two affidavits supporting her request for attorney's fees.

The trial court filed its decision letter on December 16, 1987, and a corresponding divorce decree on January 6, 1988. In the decree, the trial court awarded custody to wife, ordered husband to pay $350 child support per month, set out specific visitation instructions, and awarded wife attorney's fees of $2,537.50. Husband appeals the decree.

Husband first contends that the trial court abused its discretion when, on relevancy grounds, it sustained wife's objections to husband's direct examination of wife, and husband's direct examination of wife's neighbor, Donna Boyd, concerning wife's alleged plan to abscond with the two children. Wife's first objection, during husband's direct examination of wife, occurred when husband's counsel referred to wife's deposition testimony about her alleged plan to take the children with her out of state. Rather than repeat her earlier denial of such a plan, wife answered that at one point she had planned to do that but had changed her mind. Husband's counsel

next asked about the timing of her change of mind. That question drew a relevancy objection from wife's counsel. Although proposing to make an offer of proof, husband's counsel did not; instead, he argued that his line of questioning went to wife's credibility.

Wife's second objection occurred during husband's direct examination of wife's neighbor, Donna Boyd. Husband's counsel asked Donna Boyd about her knowledge that wife was planning to leave husband. Specifically, he asked Donna Boyd about the substance of a conversation she allegedly had with wife in July 1987. Wife's counsel objected to the relevancy of the question. The trial court sustained the objection and allowed husband's counsel to make an offer of proof, which included arguments that Donna Boyd's testimony was admissible to challenge wife's credibility about planning to leave with the children and to challenge her fitness as a potential custodial parent to fulfill duties to afford visitation between the father and his children and to promote the father-child relationship.

Evidentiary rulings are within the sound discretion of the trial court; we defer to them absent an appellant's clear showing of an abuse of that discretion. *Arnold v. Mountain West Farm Bureau Mutual Insurance Company, Inc.,* 707 P.2d 161, 165 (Wyo.1985). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986). Applying these standards, we hold the trial court erred by sustaining wife's objections to husband's questions of wife and Donna Boyd.

■ Concerning wife's objections to husband's questions of her, the trial court should have allowed husband's counsel to challenge wife's credibility. In her deposition she testified that she did not plan to leave with the children. At trial she testified that she did plan to leave with the children at one time, but changed her mind.

The trial court did not permit enough questioning to explain the apparent change in wife's testimony. Husband should have been allowed to pursue that perceived inconsistency.

■ We also disagree with the trial court's ruling on the relevancy objection to wife's testimony. Relevant evidence is "evidence having *any* tendency to make the existence of a material fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added.) W.R.E. 401. In a divorce case involving custody of children, W.S. 20–2–113(a) (June 1987 Repl.) directs the trial court to "consider the *relative competency of both parents* * * *.*" (Emphasis added.) One aspect of a person's relative competency and fitness as a parent has to be his or her willingness to allow the noncustodial parent to visit the children and maintain a parental-child relationship. *Alfieri v. Alfieri,* 105 N.M. 373, 733 P.2d 4, 10 (1987). Cf., *Henson v. Henson,* 384 P.2d 721, 723 (Wyo.1963). Thus, a party's fitness as a parent is a material fact that is of consequence to the determination of the custody question. *Id.* Evidence that a custodial parent has taken children from a jurisdiction and thereby denied the other parent visitation can be grounds for modification of a custody decree. *Id.* 733 P.2d at 11. See generally Annotation, *Interference By Custodian of Child With Noncustodial Parent's Visitation Rights as Ground for Change of Custody,* 28 A.L. R.4th 9, § 6 (1984 & Supp.1987). In the same sense, evidence that a parent planned to abscond with children who are the subject of a pending custody battle, and thereby deny the other parent visitation, is relevant to an initial custody determination under W.S. 20–2–113(a) (June 1987 Repl.). The trial court did not have to believe that wife planned to leave with the children in an effort to deny husband visitation, but husband's evidence on that issue was relevant.

■ Testimony Donna Boyd might have given about wife's alleged plan was similarly relevant and should have been allowed

by the trial court. Donna Boyd's conversations with wife [1] about the alleged plan to leave with the children were also admissible as proof of a specific instance of wife's conduct offered to prove her lack of character as a competent custodial parent. In a divorce action involving custody of children, each party's fitness as a parent is an essential element of the claim involved. 1A J. Wigmore, *Evidence* § 69.1 at 1457. See also W.S. 20–2–113(a) (June 1987 Repl.) When a person's character is an essential element of the claim involved, proof of that character may be made by specific instances of conduct. W.R.E. 405(b). See also *Ex parte Berryhill*, 410 So.2d 416, 419 (Ala. 1982); and 1A Wigmore, supra. Donna Boyd's testimony would have been admissible under W.R.E. 405.

Having identified these two incorrect trial court rulings, husband must show that these rulings constituted prejudicial error. The trial court's incorrect rulings must adversely affect his substantial rights so that, without them, a reasonable possibility exists of a custody decision more favorable to him. W.R.A.P. 7.04; and *Shields v. Carnahan*, 744 P.2d 1115, 1117 (Wyo.1987) (citing *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 935 (Wyo.1981)).

■ Husband did not make that showing on this issue. Although the trial court did not hear more from wife's counsel about the inconsistency between her deposition testimony and her trial testimony, it did hear enough to know that an inconsistency might exist. It was also well aware of husband's assertion that wife had planned to abscond with the children at one time based on the questions that were allowed. Although relevant and admissible, Donna Boyd's testimony about wife's alleged plan would have been cumulative. See *Clarke v. Vandermeer*, 740 P.2d 921, 927 (Wyo.1987). Despite the trial court's errors, husband has not shown prejudice to a substantial right illustrating a reasonable possibility that including the evidence would have changed the outcome. The er-

rors were harmless and will not support a reversal.

Husband next challenges the trial court's grant of custody to wife and the amount of child support he is ordered to pay. We review a trial court's findings and conclusions in that regard as an exercise of its sound discretion; we will defer to them unless they are clearly abusive. *Nuspl v. Nuspl*, 717 P.2d 341, 345 (Wyo.1986). See also *Martin*, 720 P.2d at 897.

■ The trial court did not abuse its discretion by granting custody to wife based on the evidence presented. Husband's argument that the trial was unfair because it ended before he rested is not reflected by the transcript of that proceeding. Husband was concluding his direct testimony and then *both parties* agreed to submit the remainder of their cases and arguments to the court in writing. The trial court considered the evidence submitted by both parties representing their conduct as parents and concluded that the children's best interests would be served by granting custody to wife. We find no abuse of discretion in that decision.

■ Likewise, the $350 child support per month award was not arbitrary or capricious. Husband testified that he had steady monthly income plus income from the sale of firewood in the winter and landscaping jobs in the summer. He also admitted that he turned down other employment in recent years. The trial court did not abuse its discretion in setting the amount of child support at $350 per month.

■ Husband's final challenge concerns the attorney's fees awarded to wife. In divorce cases, the award of attorney's fees is considered a part of the property division and will not be disturbed on appeal absent a clear showing that the trial court abused its discretion. *Bereman v. Bereman*, 645 P.2d 1155, 1162 (Wyo.1982). See also *Martin*, 720 P.2d at 897. Husband testified on cross-examination that he withdrew a substantial amount of money from two family

---

1. No hearsay problem arose with any testimony from Donna Boyd about what wife had told her. As husband's witness, Donna Boyd could have related her conversations with wife as admissions of a party opponent under W.R.E. 801(d)(2).

bank accounts established for the children before he filed his complaint. Considering this evidence along with husband's relative financial condition and wife's affidavits of attorney's fees, we cannot conclude that the trial court abused its discretion in awarding her attorney's fees.

AFFIRMED.

THOMAS, J., filed a concurring opinion.

URBIGKIT, J., filed a dissenting opinion.

THOMAS, Justice, concurring.

I certainly agree that the judgment in this case should be affirmed. I am not so critical of the evidentiary ruling of the district judge with respect to the effort to cross-examine the wife and introduce the testimony of the neighbor. The record discloses rather clearly that the wife advised the court that she had considered a plan to move the children with her out of the state. To the extent that her testimony contradicted her deposition testimony, she was impeached, and the court was aware of that. Given the tenor of her answer, i.e., that she had considered such a plan but had abandoned it, the additional relevancy is minimal indeed. The court was advised of her consideration of the plan and the inconsistency with her deposition, and that was adequate under the circumstances. Consequently, I would not find the ruling excluding this testimony to be erroneous either with respect to impeachment or its independent relevancy. It need not be justified as harmless error because there was no error.

URBIGKIT, Justice, dissenting.

I disagree with the reasoning of the majority on both fact and principle. Again, we are faced with the issue causing the greatest divorce case strife involving excessiveness of court ordered child support where the present capacity to pay is not clearly or factually shown. The record does project, conversely, that the trial court based the child support award on appellant's previous salary during better economic times in Wyoming. This mistake was not made just once, but twice with the denial of the motion for new trial also grounded on excessiveness of the child support award. See *Curless v. Curless*, 708 P.2d 426, 431 (Wyo.1985), where the denial of such motion in addition to the initial child custody decree was considered on appeal. This issue takes on greater significance because of the present economic distress of Wyoming, and I reject the majority's gloss on moral grounds as well as its disregard for Wyoming precedent. The current loss of population in Casper, which is the residence of these parties, is mute evidence of the bygone halcyon days of high employment and higher wages.

This court's function for analysis of exercised discretion of the trial court is to determine if the amount of the child support, when all the surrounding circumstances are considered, is based on what the parent can *reasonably* be expected to pay, which means now, not in prior years when the state was blessed with high prosperity.

[I]t is imprudent to contend that, when the question involves support payments, the matter should be decided without consideration of the paying parent's ability to pay, the recipient's spending habits, and all other surrounding circumstances. *Redman v. Redman*, Wyo., 521 P.2d 584, 587 (1974). See also, § 20–2–113(a), W.S. 1977. This court in Redman agreed with the proposition that a child support order may not accurately reflect what children actually require but, rather, *what the parent can reasonably be expected to pay.* The circumstances of the parents are recognized by our controlling statute as well. Even in unbroken homes a child's monetary needs must be *limited by the parents' income.* Child support cannot be determined in a vacuum. If a child's wants and needs were to be the sole criterion, then child support may have to fall upon the state since few parents are able to raise their children without having to make do with what they have.

*Mentock v. Mentock*, 638 P.2d 156, 158 (Wyo.1981) (emphasis added and footnote omitted). The majority concludes in a

bland fashion that there was no abuse of that discretion because the child support award was not arbitrary or capricious. I find fault with such a short hand method of justice which does not even analyze this issue in relation to what the parent could reasonably be expected to pay *at this time*.[1] I would reject the expediency portrayed when the decisional process looks only superficially to appellant's income in relation to the child support and disregards other surrounding circumstances such as the property settlement, attorney fees, the childrens' medical expenses, in addition to appellant's own day-to-day living expenses. See W.S. 20-2-114 (which mandates that property division be based inter alia on "the burdens imposed upon the property for the benefit of either party and *children*") (emphasis added); 9A Uniform Laws Annotated, Uniform Marriage and Divorce Act § 309 at 400 (1987) (which specifically looks to "the financial resources and needs of the non-custodial parent") and 2 J. McCahey, Valuation & Distribution of Marital Property §§ 41.04[2] and 41.06[7] (1988) (concluding that the amount of the property settlement and alimony must be considered as part of the parent's financial resources for setting child support).[2]

This case does not amount to a simple equation of a father with steady income paying $350 child support. The testimony at the time of trial on December 4, 1987 revealed that appellant's employment of cutting and burning beetle killed timber was only when the weather permitted and with a short indefinite future.[3] The income from the landscaping was greatly varied, with one job bringing in only $30. Consequently, when one contrasts the lean present income of appellant with the court imposed responsibilities of $350 per month child support, $475 a month until $5,000 was paid to equalize the property division, the payment of appellee's attorney's fee of $2,537.50, and half of the childrens' medical expenses, in addition to his own living expenses, one must find that the trial court abused its discretion in awarding the child support figure which represented approximately 72% of appellant's monthly income. Moreover, this conclusion is further borne out by the testimony presented that appellant could not financially stay afloat when paying the lesser amount of $250 per month child support during the divorce process.[4]

Realistically, a proper analysis of all the surrounding circumstances should not look to past earnings in a different economic climate. There was much testimony before the trial court that appellant had worked for Exxon in the boom years as an underground uranium miner and had earned a good wage and received bonuses when the employment ended. However, bonuses from a past time should not be figured into the amount of income for setting child support unless there is "evidence indicating any resumption of a bonus plan or any substitute arrangement providing additional income * * *." *Petersen v. Petersen*,

---

1. It bears repeating, although previously stated by this writer and many others, that "there is an intractable law of economics that persons do not pay more than they can (unless they rob a bank, etc.)."

2. A career of experience in marital relations general practice engenders a second axiom of ex-husband behavior. "If he reasonably can pay, he will, but when faced with an order beyond his means, he will ordinarily pay nothing much of the time."

3. The exchange went as follows:
   Q. Is there a way to know whether or not this employment will last?
   A. Yes, they have a $60,000. budget.
   Q. And so do you have any idea how long it will last?
   A. Through this year and possibly next year, I mean through the winter this year into '88 until the snow goes off and then next—
   Q. You weren't talking about this calender year.

4. Cf. *Hopkins v. Hopkins,* 664 S.W.2d 273, 274 (Mo.App.1984) (where the court reversed a child support award finding a complete lack of an evidentiary basis as to the father's ability to pay) and *Olson v. Olson,* 175 Mont. 444, 574 P.2d 1004, 1008 (1978) (where the court found the imposition of "an obligation to pay child support without any evidence of an ability to pay" unwarranted).

208 Neb. 1, 301 N.W.2d 592, 595 (1981). There was no evidence of any present bonus plan and, in fact, the testimony indicated appellant had no present steady income. Actually, as is commonly known and could be judicially noticed, the Exxon mining operation no longer exists in Wyoming.

At the crux of appellee's argument and perhaps at the back of the trial court's mind was that appellant was intentionally bringing his income to an artificial low to avoid paying child support. Moreover, the majority now seems mesmerized by the perception that possibly appellant may have turned down other employment in recent years, at the expense of his children. Wyoming does impose a good faith obligation on a non-custodial parent to provide support.

> A duty to pay child support is not satisfied merely by showing limited income. One obligated to support his child has a duty to make a good faith effort to generate enough income to discharge that obligation.

*Manners v. Manners*, 706 P.2d 671, 675 (Wyo.1985). However, there was no finding that appellant did not act in good faith to earn more.[5] Further, testimony disclosed that there were few job offers, and that appellant had no prospects which would cause his economic situation to improve. Without that specific finding as sustainable by a record demonstrating that appellant intentionally, deliberately, or in bad faith was failing to generate the income, I cannot condone a practice which penalizes an individual caught in bad economic times by requiring him to pay an amount in excess of what he can.

While appellant may have a greater earning capacity when high paying jobs are again available, the trial court should award support based on current income, even if it is less than previous earnings.[6] If appellant secures a job which increases his income, a modification of child support can also be secured. *Woodward v. Woodward*, 428 P.2d 389, 390 (Wyo.1967). Appellee is not left without remedial opportunity. At this time, however, "[a] party's ability to pay must be evaluated with regard to the party's resources at the time of hearing." *In Re Support of Pearson*, 111 Ill.2d 545, 96 Ill.Dec. 69, 490 N.E.2d 1274, 1277 (1986) (citing *Elizer v. Elizer*, 36 Ill. App.3d 552, 555, 344 N.E.2d 493 (1976)).

In observing what may be considered as a tunnel vision focus on the parent's past income to award child support, I find an abuse of discretion in setting the child support award above what appellant can reasonably be expected to pay, and would remand the matter to the trial court.

That abuse of discretion does not denote misplaced intent, but rather results when the untenable decision "unfairly depriv[es] a litigant of a substantial right and den[ies] a just result * * *." *Wachtel By and Through Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56, 64 (1988). That is this case, and consequently, I respectfully dissent.

---

**5.** For other state's approaches to intentional depression of income, see: *Philbin v. Philbin*, 19 Cal.App.3d 115, 96 Cal.Rptr. 408, 411–12 (1971) (where ability to pay rather than current income could be considered only when there was a deliberate or intentional attempt to shirk his family financial responsibilities); *Travis v. Travis*, 19 Mich.App. 128, 172 N.W.2d 491 (1969) (where past earnings could be considered when the father was content to work part time without any explanation for not pursuing a full time livelihood); *Boyer v. Boyer*, 567 S.W.2d 749, 751 (Mo.App.1978) (where income from possible best efforts of parent could be imputed when it was shown he voluntarily declined to work); *Weiss v. Weiss*, 392 S.W.2d 646 (Mo.App.1965) (where former earnings were considered as well as present ones when the father voluntarily reduced his income shortly before trial); *Holt v. Holt*, 29 N.C.App. 124, 223 S.E.2d 542, 544 (1976) (where past income was not considered if honesty and good faith were present); and Annotation, *Excessiveness Or Adequacy Of Money Awarded As Child Support*, 27 A.L.R.4th 864 (1984).

**6.** Perhaps another economic fact of the past eight years is not always perceived. The wage scale for blue collar employment nearly anywhere in this country has generally sustained severe deflationary reduction, while new employment for manually related occupations commands a singularly reduced hourly rate.